Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued March 17, 2004      Decided May 18, 2004

No. 03-3011

UNITED STATES OF AMERICA,
APPELLEE

v.

HAROLD LINARES,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00038–01)

*Sydney J. Hoffman*, appointed by the court,* argued the cause and filed the brief for appellant.

*Thomas S. Rees*, Assistant United States Attorney, argued the cause for appellee. With him on the brief were *Roscoe C. Howard Jr.*, United States Attorney, and *John R. Fisher*,

---

* The court thanks Ms. Hoffman for her able assistance.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Roy W. McLeese III*, and *Stephen Gripkey*, Assistant United States Attorneys.

Before: SENTELLE, TATEL, and GARLAND, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* TATEL.

Opinion concurring in Part III filed by *Circuit Judge* GARLAND.

TATEL, *Circuit Judge*: Convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (2000), appellant argues that the district court erroneously allowed the government to present evidence that years earlier he possessed a handgun in New Haven, Connecticut. Although we agree with appellant that the evidence was irrelevant to any issue except criminal propensity and thus inadmissible under Federal Rule of Evidence 404(b), we conclude that the error was harmless and therefore affirm the conviction.

## I.

Shortly after midnight on January 3, 2002, appellant Harold Linares drove to a gas station in Washington, D.C., where he picked up Jay Davis and Zelandria Berry. According to Berry, Davis handed Linares a pistol and the three then drove to a nightclub, where Linares got into a fight that left him with a bloody nose. When they got back into Linares's car, Linares exchanged words with a group of people hanging around outside the nightclub. This exchange ended with the firing of six shots from Linares's car, and with Linares speeding away. Metropolitan Police Officer Curtis Reed, who was stationed across the street, witnessed the shooting and pursued Linares. Sergeant Curtis Jones, also at the scene but with his back to Linares's car when the shots were fired, joined the chase in his own cruiser. Pursued by the officers at speeds exceeding ninety miles per hour, Linares eventually crashed into another vehicle. As the two officers approached the wrecked car, they saw Linares throw a gun over a nearby fence.

A grand jury indicted Linares on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

At trial, the government put on nine witnesses, including the three eyewitnesses to the night's events. Officer Reed testified that while sitting in a marked police car across the street from the nightclub, he saw a dark-colored vehicle stop in front of the club. A few seconds later, preparing to shine his spotlight on the car as a way of encouraging the driver to move on, Reed "saw a muzzle flash . . . coming from the extension of [the driver's] arm." Tr. 10/17/02 (a.m.) at 33. In the driver's hand he saw a "black colored object that I believed to be a handgun." *Id.* at 34. Reed testified that he had an unobstructed view of the car at the time the shots were fired. "There's nothing in between my view of him and myself," Reed explained. "There's not . . . a bus, a truck, a car, anything." *Id.* at 32–33. Reed also testified that the area in front of the nightclub was "very well lit" by, among other things, a street light and the nightclub's "very, very large neon sign." *Id.* at 28. Reed testified that after the shots were fired the car sped away, and that he pursued it until it crashed into another vehicle. Approaching the crashed vehicle with gun drawn, Reed "noticed that there was a gun in [the driver's] left hand. He stuck his left hand out of the driver's side window and threw the gun up in the air . . . ." *Id.* at 39. Without objection, Reed identified the driver as Linares.

Sergeant Jones testified that while walking back to his vehicle from the nightclub, where he had just investigated the owner's report of an unruly patron, he heard several gunshots behind him. Turning, he saw a dark-colored Maxima speeding away and Reed chasing it. Racing to his own car, Jones joined the pursuit, catching up to the Maxima after it crashed and stopping perpendicular to it with his front end pointed at its passenger side. When Jones got out of his vehicle, he saw "the driver with his left hand holding a handgun out of the window." Tr. 10/18/02 at 42. Jones saw this from about a car length away, "looking through the [Maxima's] passenger window . . . through to the driver." *Id.* Ordered by Jones to drop the gun, the driver "complied and threw the gun over a fence which was directly in front of the car." *Id.* at 43. Jones testified that he had no trouble seeing the driver's

actions, explaining that when he arrived at the crash scene he activated his vehicle's "three high intensity lights." *Id.* at 45. Without objection, Jones identified the driver as Linares.

Berry, the female passenger, testified not only that she saw Davis hand Linares a gun at the gas station, but also that she was sitting right next to Linares in the front passenger seat when he leaned across her and fired the gun out her window. "I see him pointing the gun and shooting it," she told the jury. Tr. 10/21/02 at 42. Asked by the prosecutor how she could tell Linares was firing the gun, she explained, "I heard it. It was loud. It was right in front of me." *Id.* at 43.

The government's other witnesses included crime scene officers, firearms experts, and a fingerprint analyst. According to their testimony, the handgun recovered at the crash scene had moved in interstate commerce, had fired the shell casings recovered from inside Linares's car, and had no usable fingerprints on it.

Finally, and central to this appeal, a New Haven, Connecticut police officer testified that four-and-a-half years before these events, she arrested Linares after seeing him drop a loaded handgun onto the ground. Linares objected to this testimony, arguing that it was inadmissible under Federal Rule of Evidence 404(b) because it had no relevance to any issue other than criminal propensity. *See* Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."). Alternatively, Linares argued that even if not barred by Rule 404(b), the evidence should be excluded under Federal Rule of Evidence 403 because the danger of unfair prejudice that it posed substantially outweighed its probative value. See Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). Overruling Linares's objection, the district court admitted the evidence pursuant to Rule 404(b) to prove intent, knowledge, and absence of mistake. *See* Fed. R. Evid. 404(b) (providing that propensity evidence may "be admissible for other purposes, such as proof of motive, opportunity,

intent, preparation, plan, knowledge, identity, or absence of mistake").

Linares testified in his own defense. He claimed that he never held the gun—not at the gas station, not when the shots were fired, and not when the police approached his wrecked car. He claimed that he neither saw anyone fire shots from inside his car nor realized at the time that anyone in his car even had a gun. He claimed finally that while speeding away from the nightclub, he saw a gun in Berry's hand.

The jury convicted Linares, and the district court sentenced him to ten years in prison. On appeal he argues that the New Haven evidence was inadmissible under Rule 404(b) or, alternatively, that the district court should have excluded it under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice.

## II.

"[A] concomitant of the presumption of innocence is that a defendant must be tried for what he did, not for who he is." *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985) (quoting *United States v. Myers*, 550 F.2d 1036, 1044 (5th Cir. 1977)) (internal quotation marks omitted). Introducing evidence of a defendant's prior crimes and other bad acts—so-called propensity evidence—may conflict with this principle. As the Supreme Court has explained:

> The [character] inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

*Michelson v. United States*, 335 U.S. 469, 475–76 (1948) (footnote omitted). The danger of undue prejudice is far from theoretical. "That juries treat prior convictions as highly probative has been confirmed by empirical investigations. *See* H. Kalven & H. Zeisel, The American Jury 160 (1966). Such reliance by the trier of fact offends the long standing tradition that protects a criminal defendant from guilt by reputation and from unnecessary prejudice." *Daniels*, 770 F.2d at 1116 (internal quotation marks omitted). Embodying the principles enunciated by the Supreme Court in *Michelson*, Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).

Not all propensity evidence is inadmissible, however. Because "[e]xtrinsic acts evidence may be critical, . . . especially when th[e] issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct," *Huddleston v. United States*, 485 U.S. 681, 685 (1988), Rule 404(b) provides that propensity evidence, though inadmissible to prove character, may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." Fed. R. Evid. 404(b). Indeed, we have described the rule as one "of inclusion rather than exclusion," *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000), and explained that it excludes only evidence that "is offered for the sole purpose of proving that a person's actions conformed to his or her character," *United States v. Long*, 328 F.3d 655, 661 (D.C. Cir.), *cert. denied*, 124 S. Ct. 921 (2003).

In this case, the district court admitted the New Haven evidence as relevant to intent, knowledge, and absence of mistake. Reasserting the arguments he made in the district court, Linares contends that the evidence had no probative value on any of these issues. "We review a claim that a district court improperly admitted evidence under Rule 404(b) solely to determine whether the court abused its discretion."

*United States v. Pindell*, 336 F.3d 1049, 1056–57 (D.C. Cir. 2003).

We begin with knowledge. Knowledge was an issue because the government had to prove beyond a reasonable doubt not only that Linares possessed a firearm, but also that he possessed it knowingly. *See* 18 U.S.C. § 924(a)(2) (2000) ("Whoever *knowingly* violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." (emphasis added)). Whether the New Haven evidence was in fact relevant to the issue of knowledge turns on whether it "tende[d] to make the existence of any fact that is of consequence to the determination of the action [here, that Linares possessed the gun knowingly] more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Given the evidence in this case, we do not understand how Linares's previous possession of a pistol makes it any more likely that he knowingly possessed a gun this time. In fact, it is hard to see how Linares could possibly have possessed the gun unknowingly, i.e., without being aware that he possessed it or without realizing that the object in his hand was a gun. Presented through three eyewitnesses, the government's evidence demonstrated that Davis handed Linares a gun, that Linares later fired it several times, and that still later he held it out his car window and tossed it away—all the while aware of his actions. If the jury believed these eyewitnesses, then Linares possessed the gun knowingly; if it did not, then it should have acquitted based on the government's failure to prove possession rather than its failure to prove knowledge. Indeed, no reasonable jury could have acquitted Linares based on the belief that the government proved possession but failed to prove knowledge. The New Haven evidence was thus inadmissible to prove knowledge. Just as trial judges should not instruct juries on self-defense (or any other defense) when such a defense is unsupported by the evidence, *see Mathews v. United States*, 485 U.S. 58, 63 (1988) ("[A] defendant is entitled to an instruction as to any recognized defense *for which there exists evidence sufficient for a reasonable jury to find in his favor*." (emphasis added)), neither

should they allow the government to introduce 404(b) evidence to prove an element that the government's evidence has, by completely precluding an acquittal based on the failure to prove that element, effectively (though not formally) eliminated.

Nor, for essentially the same reason, should the court have admitted the New Haven evidence to prove absence of mistake. Given the government's evidence, no reasonable jury could have found that the government had proven possession but failed to prove absence of mistake. Disputing this, the government asserts that the jury could have thought that Linares held the gun by mistake if, for example, it believed that "given the violent crash preceding appellant's toss of the gun, . . . appellant came by the gun . . . from elsewhere in the car, *viz.*, from one of his passengers, as a random result of the crash." Appellee's Br. at 31 n.5. Even were that scenario plausible, however, it would not contradict Berry's testimony that Linares not only held the gun prior to the accident, but also that it was he who fired the shots. Of course, as the government points out, the jury might have disbelieved Berry's testimony entirely, given that on cross-examination she admitted both that she had recently been convicted of conspiracy to rob and that before trial she never mentioned that she saw Davis hand Linares a pistol at the gas station. But even if the jury discredited Berry's testimony, it still would have had Officer Reed's virtually unchallenged testimony that Linares held and fired the gun prior to the accident. We thus do not think that a reasonable jury could have concluded that Linares possessed the gun accidentally.

Alternatively, the government argues that in light of Reed's testimony that after the crash Linares reached down onto either the car floor or his seat and "came up [with] . . . a gun in his left hand," Tr. 10/17/02 (a.m.) at 39, the jury could have found that at some point the gun was not actually in Linares's hand. In other words, the government argues that the jury could have concluded that while Linares never actually possessed the gun, he possessed it constructively, i.e., had dominion and control over it. Given this possibility, the government argues, it needed to introduce the New Haven evidence

to prove that Linares's constructive possession was knowing. We think not. The jury would have needed to consider constructive possession only if it entertained a reasonable doubt as to actual possession, and the same sentence of Reed's testimony that the government quotes demonstrates that even if the possession had been constructive at some time, it became actual when Linares "came up [with] . . . a gun in his left hand." Moreover, we doubt very much that the jury would have considered constructive possession given that the district court declined to instruct on it. Perhaps, as the government argues, the facts of the case would have supported such an instruction. The jury was not so instructed, however, and government counsel acknowledged at oral argument that by failing to object to the instruction given, the government waived any claim that the district court erred in refusing to instruct on constructive possession.

Undaunted, the government asserts that "a jury that credited some of the government's evidence and some of appellant's testimony might have concluded beyond a reasonable doubt that appellant constructively possessed the weapon, while having a reasonable doubt that he—as opposed to Berry or Davis—actually fired or discarded the gun." Appellee's Br. at 32 n.6. We are unsure what the government means by "some" of its evidence. The jury could have had a reasonable doubt that Linares rather than Davis or Berry fired or discarded the gun only if it rejected the key testimony of all three government eyewitnesses. And had the jury done so, it would have lacked any basis to conclude beyond a reasonable doubt that Linares ever possessed the gun, either actually or constructively, because if either Davis or Berry possessed and fired the gun, then Linares could not possibly have had sufficient dominion and control over it to establish constructive possession. We thus remain convinced that given the evidence, no reasonable jury, instructed as was this one, could have found beyond a reasonable doubt that Linares possessed the gun by mistake. The district court therefore should not have admitted the New Haven evidence to prove absence of mistake.

We turn next to intent. Although Rule 404(b) lists intent as one of the purposes for which other-acts evidence may be admissible, the New Haven evidence was inadmissible for that purpose because under section 922(g)(1), the government had no obligation to prove intent. That section makes it unlawful for felons to possess a firearm knowingly. It says nothing about intent. *See, e.g.*, *United States v. Gorman*, 312 F.3d 1159, 1163–64 (10th Cir. 2002) ("In a [case] of possession of a firearm by a convicted felon pursuant to … § 922(g)(1), the government must prove [that] … the defendant … knowingly possessed a firearm." (internal quotation marks omitted)).

To be sure, the words "intent" and "knowledge" can have similar meanings. In particular, when intent is used to mean not specific intent (as in "possession with intent to distribute") but rather general intent—which refers to "the knowing commission of an act that the law makes a crime," *United States v. Kleinbart*, 27 F.3d 586, 592 n.4 (D.C. Cir. 1994)—the definitions of the two terms overlap. That said, "[k]nowledge … is not identical with intent." *Morissette v. United States*, 342 U.S. 246, 270 (1952). Moreover, to the extent the district court took intent to mean general intent, and thus a synonym for knowledge, we have already explained why knowledge provided no basis for admitting the New Haven evidence. *See supra* pages 7–8.

The government next argues that the New Haven evidence was admissible because "it tended to corroborate the eyewitness testimony of [the two officers] and Berry." Appellee's Br. at 36. Although the district court did not admit the evidence for corroboration, we address the argument because "[a]s the prevailing party, the Government is entitled to defend the judgment on any ground that it properly raised below." *Jones v. United States*, 527 U.S. 373, 396 (1999).

The government relies primarily on our decision in *United States v. Bowie*, where we stated that "[a]lthough Rule 404(b) does not explicitly list corroboration among its examples of non-propensity purposes, evidence of other crimes or acts is admissible to corroborate evidence that itself has a legitimate

non-propensity purpose." 232 F.3d at 933. But *Bowie* does not stand for the proposition that otherwise-inadmissible propensity evidence can be introduced under Rule 404 to corroborate non-propensity evidence. If it could, then propensity evidence would always be admissible. As long as the government had a single piece of non-propensity evidence tending to prove the defendant's guilt—a single eyewitness, one fingerprint, anything at all—the propensity evidence would be admissible to corroborate it. We pointed this out last year in *United States v. Bailey*, 319 F.3d 514 (D.C. Cir. 2003), observing that:

> [U]se of 404(b) evidence for corroboration [has] inherent complications. Corroboration, in and of itself, is not a separate purpose belonging in the open class of permissible purposes referred to in Rule 404(b)'s second sentence. If it were, evidence could slide past the rule against improper character evidence. To decide if Rule 404(b) evidence is admissible for corroboration, the court must determine what is being corroborated and how. If similar past acts were corroborative *only* because they showed the defendant's character and the likelihood of "action in conformity therewith," plainly the rule would call for exclusion. On the other hand, evidence might corroborate a witness's testimony by showing plan, purpose, intent, etc. and therefore be admissible under 404(b). The label "corroboration" thus merely invites a closer look at exactly how the evidence may be probative.

*Id.* at 520. Corroboration, then, does not provide a separate basis for admitting evidence. As government counsel forthrightly acknowledged at oral argument, prior-acts evidence must corroborate other evidence by proving a proper element, such as intent or identity. Because the New Haven evidence was inadmissible to prove knowledge, intent, absence of mistake, or for any other permissible purpose, it was inadmissible to corroborate the eyewitness testimony.

Though never adequately explaining how the New Haven evidence was relevant to the issues for which the district court admitted it, the government asserts that "cases in this

Circuit and others show that evidence of a prior or subsequent possession of an item such as a firearm is admissible as 404(b) evidence." Appellee's Br. at 27–28. But the possession cases the government lists in a two-page string cite differ from this case because in each of those cases, unlike here, a reasonable jury could have concluded that the charged possession was unknowing or mistaken, and thus the government needed the other-acts evidence to prove knowledge or absence of mistake. For example, in *United States v. Cassell*, 292 F.3d 788 (D.C. Cir. 2002), the government charged the defendant with being a felon in possession after police searched his uncle's home and found firearms in the bedroom in which the defendant was staying. A reasonable jury could have concluded that while the defendant constructively possessed the weapons (in that he had dominion and control over them because they were in his bedroom), his constructive possession was unknowing—perhaps because his uncle stashed the weapons in the bedroom without telling the defendant. That was a classic case for introducing prior instances of gun possession, since the government would otherwise find it extremely difficult to prove that the charged possession was knowing. *See Huddleston*, 485 U.S. at 685.

All of the other felon-in-possession cases in the government's string cite are similarly distinguishable. In *United States v. Brown*, 16 F.3d 423 (D.C. Cir. 1994), the defendant was charged with possessing two guns the police found in a safe in his co-defendant's daughter's bedroom; because a reasonable jury could have concluded that someone else put the guns in the safe without the defendant's knowledge, the court allowed the government to introduce a gun that the police found on the defendant when they arrested him. In *United States v. King*, 254 F.3d 1098 (D.C. Cir. 2001), the defendant was charged with possessing a gun that police saw "wedged into the back of the sunroof," *id.* at 1099; a reasonable jury could have concluded that the defendant lacked any knowledge that the gun was wedged there. (In any event, because we found the introduction of the 404(b) evidence in *King* to be erroneous, although harmlessly so, the case cannot stand for the proposition that the admission of 404(b) evi-

dence is proper in a case like this.) In *United States v. Mills*, 29 F.3d 545 (10th Cir. 1994), the defendant was charged with possessing guns that police recovered from various places in his home, a home shared with another person; a reasonable jury could have concluded that the guns belonged to the other person and that the defendant therefore possessed them unknowingly. In *United States v. Brown*, 961 F.2d 1039 (2d Cir. 1992) (per curiam), the defendant was charged with possessing an Uzi that police found in his apartment when he was elsewhere; a reasonable jury could have decided that others who had access to the apartment put the gun there without the defendant's knowledge. And in *United States v. Teague*, 737 F.2d 378 (4th Cir. 1984), the police found a pistol on the floor of the vehicle the defendant was driving; a reasonable jury could have concluded—particularly after the defendant testified that he "did not know the pistol was in his automobile at the time of his arrest, and that it must have been left there by [a friend] who had borrowed his car," *id.* at 380—that the defendant's constructive possession of the pistol was unknowing. In contrast to all these cases, given the government's evidence here, no reasonable jury could have concluded that the defendant possessed a firearm either unknowingly or mistakenly.

The remaining cases the government cites are even easier to distinguish. Because the defendant in *Bowie* was charged with possessing counterfeit money, the government had to prove he knew the bills were forgeries. *See* 232 F.3d at 930. That is a clear case for introducing 404(b) evidence, for otherwise a reasonable jury could conclude that even though the defendant knowingly held the bills, he had no idea they were counterfeit. In this case, by contrast, no reasonable jury could have concluded that Linares possessed a gun without knowing it was a gun. In *United States v. Gomez*, 927 F.2d 1530 (11th Cir. 1991), the defendant was charged with possessing a firearm in connection with a drug crime, and the government introduced the 404(b) evidence not to prove knowledge, but rather "to rebut [the defendant's] claim that the gun in his glove compartment in this case had nothing to do with the drug transportation." *Id.* at 1534.

And in *United States v. Williams*, 895 F.2d 1202 (8th Cir. 1990), the defendant was charged with possessing and conspiring to possess crack cocaine with intent to distribute, as well as with possessing a firearm in connection with a drug crime. Unlike in this case, there the government had to prove specific intent, making admission of the 404(b) evidence proper because the jury could reasonably have concluded that the defendant possessed the drugs but lacked intent to distribute. The *Williams* court also approved the evidence's admission to prove knowledge or absence of mistake, but in that case the police arrested the defendant outside the apartment in which they found the drugs he was charged with possessing—again, a very different situation from the one presented here.

The government next relies on *United States v. Crowder*, 141 F.3d 1202 (D.C. Cir. 1998) (en banc), in which we held that a defendant may not bar the government from introducing 404(b) evidence to prove an element of the crime by stipulating to that element and accepting a jury instruction that relieves the government of any burden to prove it. *See id.* at 1203. *Crowder* provides no help to the government, however, because we conclude here not that admission of the New Haven evidence was erroneous based on anything Linares did or failed to do at trial, but rather that given the evidence the government presented, no reasonable jury could have acquitted Linares based on the belief that the government had proved possession but not *knowing* possession. The same could not have been said in *Crowder*, where the defendant was charged with possessing crack cocaine with intent to distribute. The crack in question was in small ziplock bags contained in a brown paper bag that Crowder was holding when the police arrested him, and the 404(b) evidence was admitted to prove not only the specific intent to distribute, but also "that Crowder knew the material in the ziplock bags was crack cocaine." *Id.* at 1209. In other words, without the 404(b) evidence, a reasonable jury could have concluded either that Crowder thought the white powdery substance was flour (or some other innocuous substance), or that he had no idea the closed paper bag even contained a white powdery substance. Here, because Linares

could not have possessed the gun without recognizing the nature of the object in his hand, no similar possibility existed. And whereas the 404(b) evidence was admissible in *Crowder* because "it was more probable with the evidence than without it that Crowder intended to distribute the crack cocaine in the brown paper bag," *id.*, here the government (as we have explained) had no obligation to prove intent.

*Crowder* actually involved two separate prosecutions that we consolidated on appeal. The government contends in its brief and contended again at oral argument that the other case, *United States v. Davis*, also supports its position here. The defendant in that case sold crack cocaine to an undercover police officer who then left the area and broadcast a description of the suspect. When other officers stopped Davis as he was getting into a car, the undercover officer returned to the scene and identified him. Arresting Davis, the police found more than twenty grams of crack in the car. *See id.* at 1204. Davis's defense at trial was mistaken identity—that he was not the person who sold drugs to the undercover officer. Over Davis's objection, the district court admitted evidence of three prior cocaine sales that Davis made in the same area as the charged offense. According to the government, *Davis* supports its position because there we upheld the admission of 404(b) evidence to prove intent even though—given the undercover officer's testimony that Davis sold drugs directly to him—no reasonable jury could have acquitted Davis based on failure to prove intent.

The government overlooks the fact that the indictment against Davis included two counts: one count of distribution of a controlled substance, stemming from the sale of cocaine to the undercover officer, and one count of possession with intent to distribute five grams or more of cocaine base, stemming from the twenty grams of cocaine found in the car when the police arrested Davis. The government's introduction of the 404(b) evidence to prove knowledge and intent related not to the distribution count, but to the possession-with-intent-to-distribute count, i.e., to the drugs found in the vehicle when the police arrested Davis. Making this point clear, the government's brief to the panel that heard the case

before we ordered rehearing en banc stated that "evidence that appellant had previously sold crack cocaine could be used by the jury to establish appellant's knowledge of the presence of the drugs *in the Jetta* and his intent to sell them." Appellee's Br. at 22, *United States v. Davis*, No. 93–3059 (Sept. 19, 1994) (emphasis added); *accord id.* at 21 ("It is beyond dispute that appellant's prior efforts to distribute drugs are relevant and admissible to show his intent to distribute and knowledge of the drugs he possessed *when arrested*." (emphasis added)). The 404(b) evidence was therefore needed because a reasonable jury could have concluded that although Davis possessed the crack in the car, the government had failed to prove beyond a reasonable doubt that he intended to distribute it, and thus could have acquitted him on the second count. No similar acquittal was possible here.

Even setting aside the factual differences that distinguish both *Crowder* and *Davis* from this case, Linares's argument—that the facts and the government's evidence effectively removed an element from the case—played no role in the consolidated *Crowder* decision. As our en banc opinion noted, "neither defendant contested the relevancy of the other crimes evidence to his intent, except on the basis that their proposed stipulations took intent out of the case." *Crowder*, 141 F.3d at 1209. The defendants limited their appeal to this single issue because in our order setting *Crowder* and *Davis* for joint en banc review, we directed that "[b]riefing and argument will be limited to the following issue: Whether the [government] must generally accept an offer of stipulation by defense counsel thereby precluding the [government] from introducing evidence under Federal Rule of Evidence 404(b) to prov[e] an element of the offense." *Crowder*, No. 92–3133, and *Davis*, No 93–3059 (D.C. Cir. May 18, 1995) (en banc) (per curiam) (order scheduling en banc oral argument). Clearly reflecting that limitation, our opinion concluded: "we hold that a defendant's offer to stipulate to an element of an offense does not render the government's other crimes evidence inadmissible under Rule 404(b) to prove that element." *Crowder*, 141 F.3d at 1209.

In sum, we hold that Rule 404(b) barred admission of the New Haven evidence because, in Rule 401's terms, the evidence made it no "more probable or less probable" that Linares possessed the gun knowingly or unmistakenly, and because the government had no obligation to prove intent. We thus have no need to address Linares's alternative argument that Rule 403 required the district court to exclude the evidence.

### III.

The government contends that even if admission of the New Haven evidence violated Rule 404(b), we should nonetheless sustain Linares's conviction because the error was harmless. Under Rule 52(a) of the Federal Rules of Criminal Procedure, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Because the error in this case affected no constitutional rights, *see King*, 254 F.3d at 1101–02, we must disregard it unless it had a "substantial and injurious effect or influence in determining the jury's verdict," *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). The government bears the burden of proving the absence of such an effect. *See, e.g.*, *United States v. Whitmore*, 359 F.3d 609, 622 (D.C. Cir. 2004) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)).

Given the multiple and consistent eyewitness accounts that it presented at trial, the government has met its burden. Recall that Officer Reed, having an unobstructed view of Linares's car on a well-lighted street, saw a muzzle flash from a "black colored object" that was in Linares's extended hand—an object Reed thought was a gun. Later, as he approached Linares's crashed car, Reed saw Linares hold a gun in his hand and throw it over a nearby fence. Sergeant Jones, standing just five to ten yards from Linares with an unobstructed view in good lighting, also saw Linares toss a gun from the car window. And Berry not only saw Linares holding a gun at the gas station, but also saw him hold and fire a gun outside the nightclub, the latter while he was leaning over her only inches away.

Barely contesting the force of this evidence, Linares's brief states only that "it cannot be said that [the] testimony that Linares had possessed and disposed of a pistol in 1997 in New Haven, Connecticut did not contribute to the guilty verdict." Appellant's Br. at 29. At oral argument, Linares's counsel did contend that two of the government's eyewitnesses had their credibility damaged during cross-examination: Sergeant Jones because he acknowledged that during his sworn testimony to the grand jury he stated, contrary to his trial testimony, that he saw Linares leave the nightclub, *see* Tr. 10/18/02 at 162, and Berry because she admitted both that she had recently been convicted of conspiracy to rob and that before trial she failed to mention that she saw Davis hand Linares a pistol at the gas station. But even assuming that both witnesses' credibility was damaged (and we question how much harm resulted from a single inconsistency in Jones's testimony), the damage did nothing to undermine Officer Reed's credibility. The cross-examination of Reed, though lengthy, scarcely addressed his testimony that he saw Linares hold and fire a handgun—testimony that by itself gave the jury ample basis to convict. Moreover, Reed's unimpeached testimony corroborated both Jones's and Berry's, likely compensating for any credibility problems the jury may have thought those two had.

Because the government has carried its burden to prove harmless error, Linares's conviction is affirmed.

*So ordered.*

1

GARLAND, *Circuit Judge*, concurring in Part III of the court's opinion:

I concur in the court's ruling in Part III that, even if the district court erroneously admitted evidence that Linares had previously been arrested for possession of a handgun, any such error was manifestly harmless. Whether the admission of that evidence violates Rule 404(b) is a substantially more difficult question, particularly in light of the en banc court's opinion in *United States v. Crowder and Davis*, 141 F.3d 1202 (D.C. Cir. 1998). Given the ruling in Part III, it is a question that need not be decided in order to resolve this case.