IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 13, 2007

Charles R. Fulbruge III
Clerk

Nos. 06-30535, 06-30563

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NYRON JONES,

Defendant-Appellant.

--------------------
Appeals from the United States District Court
for the Eastern District of Louisiana
--------------------

Before GARWOOD, WIENER, and CLEMENT, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Nyron Jones was convicted by a jury of
unlawful possession of a firearm by a convicted felon.  Jones
grounds his appeal of this conviction in the assertedly erroneous
ruling of the district court that allowed the government to
introduce evidence of a prior conviction for the same crime
committed under circumstances virtually identical to those alleged
in this case.

Also, at the time of his arrest, Jones was serving a term of
supervised release related to his prior firearms conviction and
thus was subject to revocation of release and reimprisonment

("revocation sentence") for violating the terms of his release. Jones received the statutory maximum two-year revocation sentence, which he now appeals as unreasonable.

## I. FACTS & PROCEEDINGS

In 2002, a New Orleans police officer saw Jones remove a handgun from his front waistband and place it under a house. Jones, who had an earlier felony conviction for robbery, was arrested and subsequently charged with unlawful possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1). He pleaded guilty and was sentenced to 33 months of imprisonment and three years of supervised release.

Only four months into his supervised release following his completion of that term of imprisonment, Jones was again arrested and again charged with being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). At Jones's trial on this second firearms charge, New Orleans Police Detective Brian Pollard testified that, while in a police car on a night patrol, he saw Jones adjust an object in his front waistband. Suspecting that object to be a firearm, Detective Pollard got out of the patrol car and approached Jones, who, according to Detective Pollard, fled into an alley between two houses. Detective Pollard testified that he followed Jones into the alley and saw him remove an object from his waistband and toss it under one of the houses. Shortly

2

thereafter, Detective Pollard recovered a handgun from underneath that house.

Jones's cousin, Keva Peters, was present when Jones was arrested. At Jones's trial, Peters contradicted Detective Pollard's testimony, stating that he and Jones were standing on the porch of a house when Detective Pollard approached, and that Jones was questioned and detained in that area but never went into the alley between the two houses. Peters also testified that he saw Detective Pollard go into the alley after Jones had been placed in police custody and return with a firearm.

Even though Jones stipulated to his convicted-felon status, the government filed a motion to introduce the factual basis from Jones's prior firearm offense. After hearing opening statements and some of the testimony, the district court granted the government's motion. At the conclusion of a two-day jury trial, Jones was convicted as charged.

At sentencing, the court imposed a term of 78 months imprisonment, expressing several reasons for its decision to sentence Jones above the advisory Sentencing Guidelines range of 33 to 41 months. The court specifically noted that Jones had been convicted of precisely the same offense just a few years earlier and had been out on supervised release for only four months when he was arrested for this repetition of the same crime.

3

In a separate proceeding after Jones was sentenced, a different district judge, the one who was continuing to oversee Jones's earlier felon-in-possession case, revoked his supervised release and imposed the statutory maximum revocation sentence of two years imprisonment, to be served consecutively to his new sentence for firearm possession. This revocation sentence of 24 months represented an upward variance from the Guidelines range of 6-12 months for such a supervised release violation. In imposing the maximum revocation sentence, the supervising district judge noted, <u>inter</u> <u>alia</u>, that the new conviction that produced the revocation of Jones's supervised release involved the same conduct for which Jones had been convicted previously and that the new firearms violation occurred only four months into the term of supervised release for the old one.

## II. ANALYSIS

**A. Rule 404(b) Evidence[1]**
**1. Standard of Review**

We review evidentiary rulings for abuse of discretion.[2] In a criminal case, however, Rule 404(b) evidence must "be strictly relevant to the particular offense charged."[3]

---

[1] Fed. R. Evid. 404(b).

[2] <u>United States v. Yi</u>, 460 F.3d 623, 631 (5th Cir. 2006).

[3] <u>Id.</u> (quoting <u>United States v. Hernandez-Guevara</u>, 162 F.3d 863, 869 (5th Cir. 1998)).

4

## 2. Applicable Law

"Relevant evidence" is that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[4] "All relevant evidence is admissible, except as otherwise provided."[5] Even relevant evidence, however, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[6] "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," and may only be admitted for legitimate non-character purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[7]

In <u>United States v. Beechum</u>, we established that evidence of prior crimes is not admissible in criminal cases unless (1) it is relevant to an issue other than the defendant's character or his

---

[4] Fed. R. Evid. 401.

[5] Fed. R. Evid. 402.

[6] Fed. R. Evid. 403.

[7] Fed. R. Evid. 404(b).

propensity to act in accordance therewith, and (2) its incremental probative value is not substantially outweighed by the danger of unfair prejudice to the defendant.[8] Beechum and its progeny inform our decision today.

### 3. Merits

Jones contends that evidence of his prior firearms crime offends both prongs of the Beechum test, because (1) its only relevance is to prove his propensity to possess firearms illegally, an impermissible purpose under Rule 404(b), and (2) its probative value is outweighed by its unfairly prejudicial impact. The government counters that (1) evidence of Jones's prior firearms offense is probative of knowledge, intent, and absence of mistake or accident, which are material facts unrelated to Jones's propensity to possess firearms illegally, and (2) the probative value of that evidence outweighs any unfairly prejudicial effect.

### a. Relevance

Jones does not dispute that evidence of his prior unlawful firearm possession meets Rule 401's general definition of relevant evidence, at least to the extent that a criminal defendant's prior offense makes it more likely that he would commit the same crime again. Jones nevertheless insists that, in this case, the prior-crimes evidence only serves to prove his propensity to carry

---

[8] 582 F.2d 898, 911 (5th Cir. 1978)(en banc).

firearms and has no relevance to any other fact "of consequence to the determination of the action" against him.[9]

### i.     The District Court's Reasoning

At the moment of his apprehension, Jones did not physically control the firearm he was charged with unlawfully possessing, i.e., it was not on his person when he was taken into custody. According to the government, this fact makes evidence of his prior firearm-possession conviction relevant to (1) show that he had knowingly and intentionally possessed the gun that was found under the house only minutes later, and (2) disprove any claim of accidental or mistaken possession or rebut a "mere presence" defense.  The trial court agreed, recognizing that "the government will have to prove beyond a reasonable doubt that Jones, among other things, knowingly possessed a firearm."  The court reasoned that the government "may prove this element [knowledge] by offering evidence of defendant's prior conviction for possession of a firearm in a similar situation which tends to show that he was in knowing possession of the gun."

The trial court went further, however, and speculated that "because the detective did not find the gun on Jones's person," the government might need to (1) prove "constructive possession," which would require it to show Jones's knowledge of the presence of the

---

[9] See Fed. R. Evid. 401.

firearm under the house and his intent to exercise dominion or control over the gun, or (2) rebut the defense that Jones was "simply in the 'mere presence' of the firearm, should the jury discredit the detective's testimony that he saw Jones's [sic] remove an item from his waistband and place it under the house."[10]

### ii. "Actual" or "Constructive" Possession

The government can prove possession by showing that a defendant exercised either direct physical control over a thing (actual possession) or "dominion or control" over the thing itself or the area in which it was found (constructive possession).[11] Jones insists that, because Detective Pollard claimed to have seen him remove something from his waistband and dispose of it in the spot where a firearm was later found, his was exclusively an actual

---

[10] At the time the district court made its 404(b) ruling, Keva Peters had not testified, and Jones had not otherwise denied being present in the area from which the gun was recovered. The record makes clear, however, that Jones never asserted a "mere presence" defense, and the court never issued a "mere presence" instruction to the jury.

[11] See United States v. Munoz, 150 F.3d 401, 416 (5th Cir. 1998)("Actual possession means the defendant knowingly has direct physical control over a thing at a given time."); United States v. De Leon, 170 F.3d 494, 496 (5th Cir.1999)("Constructive possession is the ownership, dominion or control over an illegal item itself or dominion or control over the premises in which the item is found.")(citations omitted). Constructive possession may also be proven by showing that contraband was in the direct physical possession of a person over whom a defendant exercised control. See, e.g., United States v. Willis, 6 F.3d 257, 262 (5th Cir. 1993) overruled on other grounds by Bailey v. United States, 516 U.S. 137 (1995).

8

possession case. The district court nevertheless concluded that, because Detective Pollard's testimony was arguably suspect, the government might have to offer evidence in support of the alternative theory that Jones constructively possessed the firearm found under the house. This formed the basis of the court's ruling that evidence of Jones's prior crime was admissible to show the knowledge and intent elements of constructive possession, even though they are <u>not</u> separate elements of actual possession.

In constructive possession cases, knowledge and intent are frequently at issue. A defendant will often deny any knowledge of a thing found in an area that is under his control (e.g, a residence, an automobile) or claim that it was placed there by accident or mistake. The government then must offer evidence to prove that the defendant (1) knew that the thing was present, and (2) intended to exercised dominion or control over it.

In contrast, the only knowledge that the government must show in an <u>actual</u> possession prosecution is the defendant's awareness that (1) he physically possesses the thing, and (2) the thing he possesses is contraband.[12] Intent is not an element of actual possession under § 922.[13] More to the point in this firearms case,

---

[12] <u>See</u> <u>United States v. Linares</u>, 367 F.3d 941, 946-47 (D.C. Cir. 2004).

[13] <u>See</u> <u>id.</u> at 948.

once the government has shown that the defendant had a firearm under his immediate physical control, any contention that he did not know the nature of what he possessed is effectively precluded.[14]

Jones insists that, as his is exclusively an actual possession case, the district court erred in allowing the 404(b) evidence to prove his knowledge or intent. We agree. Two cases from the D.C. Circuit are illustrative of our reasoning on this issue.

In United States v. Linares, the defendant was prosecuted for firearms possession on the basis of three eyewitness accounts of his having wielded and fired a handgun, and then tossed it away.[15] The district court allowed the government to offer evidence of Linares's prior conviction for firearms possession as proof of "intent, knowledge, and absence of mistake."[16] In appealing his conviction, Linares insisted (as Jones does here) that, because his was exclusively an actual possession case, such evidence had no probative value on any of those issues.[17] The D.C. Circuit agreed with Linares and reversed his conviction, reasoning that, because the government's evidence consisted entirely of eyewitness accounts of actual possession, the jury could find either actual possession

---

[14] See id. at 947.

[15] Id. at 943-45.

[16] Id. at 946.

[17] Id.

or <u>no</u> possession, but that "no reasonable jury could have concluded that the defendant possessed a firearm either unknowingly or mistakenly."[18]

The facts of Jones's case are quite similar to those in <u>Linares</u> and leave no doubt that his is exclusively an actual possession case. The prosecution's only substantive fact witness, Detective Pollard, testified that both (1) his initial suspicion that Jones had a gun and (2) his ultimate discovery of the firearm under the house were prompted by his contemporaneous observations of Jones's actual possession of an object later determined to be a firearm. As in <u>Linares</u>, if the jury believed Detective Pollard's testimony <u>in</u> <u>toto</u>, the government would have established, albeit circumstantially, Jones's direct physical control of the firearm.

The district court nevertheless anticipated the possibility that, because Jones's arrest occurred at night in a poorly lit area, the jury might discredit the accuracy of some of Detective Pollard's observations but credit the accuracy of others. This possibility, the district court reasoned, could compel the government to present evidence supporting an alternative basis for conviction: Jones's <u>constructive</u> possession of the firearm found under the house. (At this juncture, we note that the record is devoid of evidence that Jones owned, rented, or occupied the house

---

[18] <u>Id.</u> at 950.

11

or had any relationship with it whatsoever that could conceivably support the dominion or control needed in a constructive possession case.)

Linares involved three eyewitnesses to actual possession (including a passenger in the car that the defendant was driving while he fired the gun) and little if any question of the reliability of those observations. The D.C. Circuit rejected the government's concern that "a jury that credited some of the government's evidence and some of [the defendant's] testimony might have concluded beyond a reasonable doubt that [defendant] constructively possessed the weapon."[19] The Linares court concluded that, given the defendant's unconditional denial of any possession and the government's evidence of actual possession only, the jury could find either actual possession or no possession, but never constructive possession.[20]

Although Jones's case differs from Linares in some respects, we reach the same conclusion as did the D.C. Circuit. Keva Peters testified that Jones did not have a gun and did not go into the alley by the house where the gun was recovered. Detective Pollard testified that he saw Jones go into the alley and throw something under the house where the gun was later found. As this was the

---

[19] Id. at 948.

[20] Id.

12

extent of the material evidence presented, the jury could have either believed Detective Pollard and found actual possession or believed Peters and found no possession.  As in <u>Linares</u>, the conflicting versions of events (devoid of any evidence of dominion or control by Jones over the alleged location of the gun) make illogical any contention that, as a third alternative to actual possession or no possession, a jury might somehow find constructive possession by believing some (but not all) of Detective Pollard's testimony and some (but not all) of Peters's testimony.

The government doggedly insists, though, that it is at least theoretically plausible that the jury could have found constructive possession if it disbelieved all of Peters's testimony and believed <u>some</u>, but not <u>all</u>, of Detective Pollard's testimony.  We think not.

In <u>United States v. Garner</u>,[21] a subsequent D.C. Circuit case relied on by the government and the district court, an officer testified that he looked through a darkly tinted car window and saw the defendant place a firearm under his seat.  The trial court allowed the government to introduce 404(b) evidence of the defendant's prior firearm offense to prove the knowledge and intent elements of <u>constructive</u> possession in the event that the jury discredited as unreliable the officer's observations of the defendant's <u>actual</u> possession made through the heavily tinted

---

[21] 396 F.3d 438, 439 (D.C. Cir. 2005).

window.[22]  As in this case, the government primarily relied on the

officer's testimony at trial, and the defendant argued on appeal

that evidence of his prior crime was not relevant to his actual

possession case.

In Garner, the appellate court affirmed, holding that, even

though the government relied almost exclusively on the officer's

testimony of the defendant's actual possession of the firearm,

> . . . unlike in Linares, the trial evidence here, at the
> time the district court ruled on [the 404(b) evidence],
> did not force the jury to a disjunctive choice between
> actual possession or no possession at all.  At the time
> the district court admitted [the 404(b) evidence], it
> could reasonably have believed the jury might discredit
> [the officer's] testimony (based on his observations
> through a tinted window and smoke-filled compartment) and
> nevertheless convict Garner based on the undisputed
> testimony that the gun was found under Garner's seat when
> the car was searched.  In that event, the jury would have
> faced a paradigmatic constructive possession scenario in
> which contraband (here, a firearm) is found in proximity
> to a defendant who may or may not have been "'knowingly
> in a position to, or [have] had the right to exercise
> "dominion or control" over the [contraband].'"[23]

The D.C. Circuit concluded that, without the officer's testimony,

the key facts (a firearm found under passenger's seat) presented

"'a classic case for introducing prior instances of gun possession,

---

[22]  Id. at 440.

[23]  Id. at 442-43 (quoting United States v. Jenkins, 981 F.2d
1281, 1283 (D.C. Cir. 1982)).

14

since the government would otherwise find it extremely difficult to prove that the charged possession was knowing.'"[24]

Jones's case is similar to Garner's in some respects, but it differs from it in at least one crucial respect. If, in the instant case, the jury were to discredit Detective Pollard's observations of Jones's actual possession yet believe that the officer followed a fleeing Jones into the alley, the credited facts would present neither "a paradigmatic constructive possession scenario" (contraband found under defendant's seat in a car) nor a "classic case" for introducing 404(b) evidence. Instead, the jury would be left with the picture of a man walking, running, or standing next to a house that he did not own, rent, occupy, or otherwise exercise any dominion over, underneath which a gun just happened to be found. Without significantly more, such facts simply cannot support a finding of constructive possession.

This case shares some key factual elements with <u>Linares</u> and shares others with <u>Garner</u>, a pair of cases from the same court that produced opposite holdings on the question of the relevance of 404(b) evidence. Nevertheless, given the fundamental difference between the picture painted by the evidence here and those that emerge in the vast majority of constructive possession cases, we conclude that (1) Jones's was exclusively an <u>actual</u> possession case

---

[24] <u>Id.</u> (quoting <u>Linares</u>, 367 F.3d at 949).

(albeit one based on circumstantial evidence), and (2) evidence of Jones's prior crime was not relevant to proving actual possession.

### b.    Rule 403 Balancing

As we have concluded that the 404(b) evidence in this case was not relevant to prove the government's actual possession case against Jones, we need not proceed to the second step of the Beechum analysis, i.e., determining whether the probative value of that evidence outweighed its unfairly prejudicial impact.[25]

## B.    Jones's Revocation Sentence

As Jones was arrested and charged with unlawful possession of a firearm while serving a term of supervised release imposed following his guilty-plea conviction on the very same charge, he was subject to revocation of supervised release and reimprisonment. It was only after he was sentenced in the instant case that the district judge who had presided over Jones's first felon-in-possession conviction revoked his supervised release, imposed the statutory maximum two-year term of imprisonment, and ordered that it be served consecutively to his new firearms-possession sentence.

Jones insists that this revocation sentence was unreasonable, as the judge who imposed it justified exceeding the advisory Guidelines range of 6-12 months[26] for the same reasons that the

---

[25] Beechum, 582 F.2d at 911.

[26] See U.S.S.G. § 7B1.4.

16

district judge in the instant firearms-possession case gave for his upward variance from the Guidelines range. Jones argues that, for this reason, the non-Guidelines revocation sentence amounts to double punishment for the same conduct. We disagree.

## 1. Standard of Review

Prior to the Supreme Court's decision in United States v. Booker,[27] the accepted standard of review for revocation sentences in this Circuit was well-established. As there were "no applicable guidelines for sentencing after revocation of supervised release," a revocation sentence would be upheld unless it was "in violation of the law or plainly unreasonable."[28] This "plainly unreasonable" review has its origin in 18 U.S.C. § 3742(e)(4).[29]

Jones asserts, however, that Booker totally invalidated § 3742(e) and, by making the Sentencing Guidelines advisory in its entirety, (1) eliminated the difference between Guidelines and advisory policy statements (such as those pertaining to revocation sentences) and (2) established a "reasonableness" standard of review for all criminal sentences, including revocation sentences.

---

[27] 543 U.S. 220 (2005).

[28] United States v. Gonzales, 250 F.3d 923, 925 (5th Cir. 2001).

[29] The statute states: "Upon review of the record, the court of appeals shall determine whether the sentence . . . was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable."

There is a division among the circuits as to whether to continue reviewing revocation sentences under the "plainly unreasonable" standard or to adopt Booker's "reasonableness" standard across the board.[30] Other courts of appeal have held that the two standards are functionally the same.[31] These courts point out that Booker cites, as examples of "reasonableness" review, several cases in which courts actually applied the § 3742(e)(4) "plainly unreasonable" standard.[32]

---

[30] See United States v. Fleming, 397 F.3d 95, 99 (2nd Cir. 2005)(adopting a "reasonableness" standard); United States v. Miqbel, 444 F.3d 1173, 1176 n.5 (9th Cir. 2006)(same); United States v. Crudup, 461 F.3d 433, 437 n.5 (4th Cir. 2006)(maintaining "plainly unreasonable" review).

[31] See, e.g., United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006); United States v. Tedford, 405 F.3d 1159, 1161 (10th Cir.2005); United States v. Cotton, 399 F.3d 913, 916 (8th Cir.2005).

[32] See Booker, 543 U.S. at 262. The Booker Court expressly addressed this point:

"Reasonableness" standards are not foreign to sentencing law. The Act has long required their use in important sentencing circumstances-both on review of departures, see 18 U.S.C. § 3742(e)(3) (1994 ed.), and on review of sentences imposed where there was no applicable Guideline, see §§ 3742(a)(4), (b)(4), (e)(4).

Id. (emphasis added).

18

We have yet to address the issue squarely,[33] but we need not do so today to resolve this case. This is because Jones made no objection to his revocation sentence in the district court, so it is subject only to plain error review on appeal. As such, his revocation sentence must be upheld unless we conclude that "there is (1) error, (2) that is plain, and (3) that affects substantial rights. . . [and] (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."[34] We do not come to that conclusion.

## 2. Applicable Law

The statutory maximum term of imprisonment for possession of a firearm by a convicted felon is ten years,[35] making that offense a Class C felony.[36] A defendant convicted of a Class C felony who subsequently violates the terms of his supervised release may be reimprisoned for no more than two years.[37] The advisory policy statements in section 7B1.4 of the Sentencing Guidelines, however, recommend a revocation sentence of 6-12 months for Class C felons

---

[33] See United States v. Hinson, 429 F.3d 114, 119-20 (5th Cir. 2005).

[34] United States v. Mares, 402 F.3d 511, 520 (5th Cir. 2005)(internal quotation marks and citation omitted).

[35] 18 U.S.C. § 924(a)(2).

[36] 18 U.S.C. § 3559(a).

[37] 18 U.S.C. § 3583(e)(3).

19

in Jones's Criminal History Category (IV).  Section 7B1.3(f) of the Guidelines states that,

> [a]ny term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.

### 3.  Merits

The record dispels any question that the re-sentencing court erred in imposing Jones's revocation sentence.  As the foregoing section shows, the revocation sentence itself, its duration, and its being made to run consecutively, are explicitly authorized by law.  Moreover, even before Booker, the policy statements in § 7B1.4 of the Sentencing Guidelines were recognized as advisory only,[38] and the record reflects that the re-sentencing judge considered but rejected those policy statements for reasons detailed in his sentencing colloquy.  We are satisfied that he committed no legal error in imposing the non-Guidelines revocation sentence.

In fact, Jones does not allege error; he merely challenges the "reasonableness" of the revocation sentence, because the re-sentencing judge justified imposing the statutory maximum

---

[38] See Unites States v. Mathena, 23 F.3d 87, 91 (5th Cir. 1994).

revocation sentence for some of the same reasons given by the judge in the instant case for imposing an above-Guidelines sentence. Although the re-sentencing judge does appear to have imposed the maximum revocation sentence in partial reliance on some of the same reasons verbalized by the judge who imposed an above-Guidelines sentence in the instant case, the revocation sentencing colloquy reveals numerous additional bases for the re-sentencing judge's decision. We are satisfied that the re-sentencing court did not plainly err in deciding to impose the statutory maximum revocation sentence.

That said, however, we recognize that our vacatur of Jones's firearm possession conviction at least arguably may have nullified the re-sentencing judge's primary basis for imposing the maximum revocation sentence that it did and for making it run consecutively to this one. The law is clear that the violative conduct warranting revocation of supervised release and reimprisonment "need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt."[39] We nevertheless think it prudent to remand this matter to the court that handed down the revocation sentence based in large part on the conviction we now vacate and remand, so

---

[39]   See Hinson, 429 F.3d at 119.

21

that the underlying basis for Jones's revocation sentence may be reconsidered and clarified.

### III. CONCLUSION

We hold that the district court abused its discretion in allowing the government to introduce evidence of Jones's prior firearm offense. We accordingly VACATE Jones's conviction and sentence for possession of a firearm by a convicted felon, and REMAND for further proceedings consistent with this opinion.

We hold that Jones's revocation sentence was not plainly erroneous, but we nevertheless REMAND to the re-sentencing court for reconsideration in light of our vacatur of Jones's subsequent conviction and sentence for unlawful possession of a firearm. VACATED in part and REMANDED.