# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 22, 2007        Decided April 13, 2007

No. 05-3027

UNITED STATES OF AMERICA,
APPELLEE

v.

DEON DOUGLAS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00487-01)

*Neil H. Jaffee*, Assistant Federal Public Defender, argued the cause for the appellant. *A. J. Kramer*, Federal Public Defender, was on brief for the appellant.

*Patricia A. Heffernan*, Assistant United States Attorney, argued the cause for the appellee. *Jeffrey A. Taylor*, United States Attorney, and *Roy W. McLeese III* and *David B. Goodhand*, Assistant United States Attorneys, were on brief.

Before: HENDERSON, ROGERS and BROWN, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

2

KAREN LECRAFT HENDERSON, *Circuit Judge*: Deon Douglas (Douglas) was indicted on one charge of possessing with intent to distribute (PWID) five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). The government moved to admit evidence of Douglas's prior arrest for PWID pursuant to Federal Rule of Evidence 404(b) (Rule 404(b)), arguing that it was relevant to Douglas's knowledge and intent regarding the pending PWID charge. In response, Douglas asserted that the prejudicial impact of the evidence substantially outweighed its probative value, making it inadmissible under Federal Rule of Evidence 403 (Rule 403). After conducting two evidentiary hearings, the district court admitted the prior arrest evidence and a jury convicted Douglas on the PWID charge. Douglas now appeals. As set forth below, we affirm the district court's admission of the Rule 404(b) evidence.

**I.**

On November 7, 2002, members of the Metropolitan Police Department's (MPD) "Focused Mission Team" drove "between three and four" unmarked vehicles into the cul-de-sac at 59th Place in northeast Washington D.C., "a high drug area for sales of crack cocaine." 2/19/04 Tr. 155–56, 158.[1] As the officers entered 59th Place they observed Douglas standing in the cul-de-sac "beside a blue . . . Honda Prelude," *id*. at 157, and "leaning towards" a nearby idling car "to talk to someone in the car," 2/20/04 (a.m.) Tr. 6–7. Douglas "looked square, directly towards" the approaching vehicles "and then immediately took off running" in the direction of East Capitol Street. 2/19/04 Tr. 47–48; 2/20/04 (a.m.) Tr. 7. In response, three MPD officers

---

[1]The facts are taken from evidence adduced both during the April 24, 2003 *in limine* hearing on the Rule 404(b) evidence and at trial.

exited their vehicles and pursued Douglas. 2/19/04 Tr. 48, 158–59; 2/20/04 (a.m.) Tr. 7–8. The officer leading the pursuit, Peter Sheldon (Sheldon), followed "about . . . 5 to 10 feet" behind Douglas as he ran down an alley and past the intersection of East Capitol Street and Sixtieth Street. 2/19/04 Tr. 48. As the two men ran through the alley, Sheldon noticed that Douglas had a clear plastic bag, resembling "[a] sandwich bag," in his hand. *Id*. at 103. Thereafter, Sheldon observed Douglas "throwing [the plastic bag] into the trash can" at the intersection of East Capitol Street and Sixtieth Street—where the alley reconnects with the main roadway—"and then continuing down the sidewalk." *Id*. at 106.[2]

Sheldon stopped abruptly "to recover whatever [Douglas] had tossed in the trash can." *Id*. at 49. The other officers, however, rushed past Sheldon and maintained the pursuit through a wooded area between Sixtieth Street and Southern Avenue, *id*. at 161; 2/20/04 (a.m.) Tr. 14, ultimately apprehending Douglas "crouched down behind some bushes

---

[2]Neither of the other two officers chasing Douglas observed much of the pursuit through the alleyway. Officer Airey Moore (Moore) ran past the alley and straight to East Capitol Street and thus lost sight of both Douglas and Sheldon once they entered the alley. *See* 2/19/04 Tr. at 159–60; 181–82. Officer James Black (Black) testified that, because he was "a little bit slower than everybody else," he was "a little further back" during the chase through the alley and consequently lost sight of Douglas. 2/20/04 (a.m.) Tr. 8. Although Black did see Douglas run within a few feet of the trash can at the intersection of Sixtieth Street and East Capitol Street, he was too far away to observe what, if anything, Douglas did as he passed the trash can. *See* 2/20/04 (p.m.) Tr. 37–38.

kneeling in the dirt," *id*. at 14–15.[3] While the other officers continued to chase Douglas, Sheldon looked into the trash can, which "was almost half-filled with water," and observed the clear plastic bag floating with other debris. 2/19/04 Tr. 50. A crime scene search officer then arrived to photograph the plastic bag inside the trash can, *id*. at 109–10, after which Sheldon removed the plastic bag and discovered that it "contained 54 Ziplocs . . . packaged with a white rock substance," *id*. at 55. Sheldon "conducted a field test" of the white substance, "which had a positive color reaction for the presence of cocaine," *id*., and a Drug Enforcement Administration (DEA) chemist subsequently confirmed that the recovered plastic bag contained 7.4 grams of crack cocaine, 2/23/04 Tr. 99, 103, 104.

Based on these events, Douglas was indicted on one count of PWID five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii).[4] *See* Appendix for Appellant (Appx.) at 20. The government moved *in limine* to admit evidence pursuant to Rule 404(b) establishing that, on August 24, 2001, Douglas was arrested at 58th Street in

---

[3]Upon apprehending Douglas, Officer Black searched him and recovered a Honda key. *See* 2/20/04 (a.m.) Tr.16–17; 2/20/04 (p.m.) Tr. 17. Black then walked Douglas back to 59th Place and opened the Honda Prelude with Douglas's key. *See* 2/20/04 (p.m.) 17. A license plate check indicated that the Honda was not registered and Officer Black therefore entered the vehicle in search of evidence of ownership. *See* 2/20/04 (a.m.) Tr. 18, 22. Inside the car, Black discovered documents bearing Douglas's name as well as a gun hidden in the car's sunroof. *Id*. at 23–24, 33–34.

[4]The indictment also charged Douglas with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) and using, carrying and possessing a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). Appx. at 19–20.

northeast Washington, D.C. for selling crack cocaine to an undercover MPD officer. *See id*. at 22–23. The government argued the evidence was admissible under Rule 404(b) because it "illustrate[d] [Douglas's] opportunity to possess the cocaine" found in the trash can upon his arrest on November 7, 2002 as well as "his motive and intent to distribute it, and the absence of mistake." *Id*. at 24. Douglas responded by asserting that the probative value of his August 2001 PWID arrest was substantially outweighed by its unfairly prejudicial impact because, "[e]ven with a limiting instruction, jurors will have a difficult time resisting the natural human impulse to make the impermissible inference that someone who has previously broken the law is more likely to break the law on a subsequent occasion," Appx. at 35, and thus the evidence should be excluded under Rule 403. Following an evidentiary hearing, the district court granted the government's motion *in limine*, concluding that the prior arrest evidence was "proffered for reasons other than to show bad character, specifically, that . . . Douglas had the intent to commit the crime charged . . . and had knowledge," 4/24/03 Tr. 111–12, and, consequently, admissible under Rule 404(b), *id*. at 114.[5]

At trial, the government provided the testimony of Officers Sheldon, Black and Moore to describe their pursuit and arrest of Douglas on November 7, 2002. In addition, the government presented the testimony of an expert in narcotics sales and distribution in Washington, D.C, 2/20/04 (p.m.) Tr. 73, who stated that an individual drug user "buy[s] a little bit [of crack] at a time to satisfy [his] craving," *id*. at 97, and thus would not have purchased the quantity of crack cocaine discovered in the

---

[5]The government's *in limine* motion was heard by a different district judge from the district judge who presided at Douglas's trial.

trash can by Sheldon; instead, the expert opined, such a quantity was likely intended for sale, *id*. at 96–98. Douglas sought to impeach Sheldon, the only witness linking Douglas to the plastic bag, by noting that Sheldon's trial testimony regarding the recovery and field testing of the crack cocaine, *see* 2/19/04 Tr. 111 ("I conducted the field test."), differed from his earlier testimony in support of the government's *in limine* motion, *id*. at 112–14. Douglas also presented a forensic chemist as an expert witness, *see* 2/24/04 Tr. 80–83, to challenge the DEA's methodology in testing the substance recovered from the ziplock bags, *id*. at 103–04, 117–18. Indeed, Douglas's expert opined that the DEA's method did not "substantiate[]" the conclusion that the recovered substance was crack cocaine, 2/25/04 Tr. 42, as opposed to "imitation crack" such as hard soap, *id*. at 40.

Before the government presented evidence of Douglas's August 2001 PWID arrest at trial, Douglas renewed his objection to its admissibility. *See* 2/19/04 Tr. 209. The district court, believing that under Rule 403 "it's really necessary to hear [the Rule 404(b) evidence] in order to determine whether or not that evidence should really come in," 2/20/04 (a.m.) Tr. 49, heard—in the absence of the jury—the government's evidence of Douglas's prior PWID arrest, namely testimony of the arresting officers and the undercover officer to whom Douglas sold the crack cocaine, *see* 2/23/04 Tr. 5–40. After hearing further arguments from the parties, the district court admitted the evidence because Douglas's August 2001 PWID arrest "would go to the question of intent to distribute, which is a required element of the charged offense." *Id*. at 64. Indeed, the district court concluded that "the fact of [prior] distribution of drugs certainly goes to the fact that the possession of the drugs [in the charged offense] was, indeed, with the specific intent to distribute," *id*. at 64–65, and that the link to intent "and

perhaps . . . knowledge would make this evidence admissible" under Rule 404(b), *id*. at 65.

Thus, on the afternoon of February 23, 2004, the government presented the Rule 404(b) evidence of Douglas's August 2001 PWID arrest. The following day, the district court instructed the jury on the proper use of this evidence:

> If you consider this evidence, you may use that evidence only to help you decide whether the government has proven beyond a reasonable doubt that the defendant possessed the evidence in this case with the specific intent to distribute cocaine base, and that he acted knowingly and intentionally and with knowledge that the substance in fact was cocaine base.
>
>  You may not consider that evidence for any other purpose.  You may not consider the evidence to conclude that the defendant has a bad character or that he has a criminal personality.  The law does not permit you to convict a defendant simply because you believe he has committed other things not specifically charged in this case.
>
>  You may not conclude from this evidence that because the defendant may have allegedly sold cocaine to an undercover police officer on August 24, 2001, that he necessarily committed the acts charged in the indictment in this case.
>
>  You may . . . only consider the evidence for the limited purpose of showing whether the defendant, if he possessed cocaine in this case, did so knowingly and intentionally with the specific intent to distribute.

The defendant is on trial only for the crime charged in this case, and you may only consider the prior alleged acts on the issue of intent and knowledge.

2/24/04 Tr. 37–38. The district court repeated this instruction verbatim in its closing charge to the jury. *See* 2/26/04 Tr. 92–93.[6] The jury subsequently convicted Douglas of PWID crack cocaine on November 7, 2002.[7]

Douglas moved for a new trial, claiming that the district court erred in admitting the evidence of his August 2001 PWID arrest, *see* Mot. for a New Trial, *reprinted in* Appx. at 39–45, which motion the district court denied, *see* Mem. Order on Mot. for New Trial at 12, *reprinted in* Appx. at 66. The district court emphasized the government's affirmative duty to prove Douglas's knowing possession of, and specific intent to distribute, the crack cocaine, *see id.* at 57–58, and again found the evidence of Douglas's prior arrest relevant to the permissible purposes of establishing his knowledge, possession and intent regarding the drugs discovered on November 7, 2002, *id.* at 58–60; *see id.* at 60 ("In sum, the Court finds that there were at least three permissible avenues by which the 404(b) evidence became relevant to this prosecution."). Because it was relevant for permissible purposes, the district court turned to "whether the 404(b) evidence was properly admitted under [Rule 403]." *Id.* at 61. The district court found the Rule 404(b) evidence

---

[6]In his closing argument, the prosecutor stated that the evidence was relevant only to show "that [Douglas] knows what crack cocaine . . . looks like . . . [a]nd . . . that [Douglas's] intent was to distribute the crack cocaine that he had on November 7, 2002." 2/26/04 Tr. 45–46.

[7]The jury acquitted Douglas of the two counts related to the gun discovered in the Honda Prelude. *See* Appx. at 67–68.

probative given the impeachment of the government's witnesses and the fact that none of the other evidence indicative of Douglas's intent and knowledge was "overwhelming." *Id.* at 62–63. Moreover, "the jury was instructed on how the 404(b) evidence should be used," thereby protecting Douglas from the danger of unfair prejudice and rendering the evidence admissible under Rule 403. *Id.* at 63. Accordingly, the district court denied Douglas's new trial motion. *Id.* at 66. Douglas now appeals.

## II.

"A proper analysis under Rule 404(b) begins with the question of relevance: is the other crime or act relevant and, if so, relevant to something other than the defendant's character or propensity [to commit crime]? If yes, the evidence is admissible unless excluded under other rules of evidence such as Rule 403." *United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000). Douglas argues that evidence of his prior PWID arrest is both irrelevant to any purpose other than his criminal propensity and unfairly prejudicial under Rule 403. "We review a claim that a district court improperly admitted evidence under Rule 404(b) solely to determine whether the court abused its discretion." *United States v. Pindell*, 336 F.3d 1049, 1056–57 (D.C. Cir. 2003); *see also United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) (district court's Rule 404(b) ruling afforded "much deference on review") (internal quotation omitted). Moreover, because the "trial court is in the best position to perform [the] subjective balancing" required by Rule 403, "its decision should be reviewed only for grave abuse." *Id.* at 795–96 (internal quotation omitted).

## A.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed.

R. Evid. 404(b). Yet the rule permits such evidence for other purposes, including proof of motive, intent, knowledge, identity and absence of mistake. *Id.* Indeed, "Rule 404(b) is a rule of inclusion rather than exclusion," *Bowie*, 232 F.3d at 929, "prohibiting the admission of other crimes evidence 'in but one circumstance'—for the purpose of proving that a person's actions conformed to his character." *United States v. Crowder*, 141 F.3d 1202, 1206 (D.C. Cir. 1998) (en banc) (quoting *United States v. Jenkins*, 928 F.2d 1175, 1180 (D.C. Cir. 1991)). "Rule 404(b) thus is not so much a character rule as a special aspect of relevance" because it "does not prohibit character evidence generally, only that which lacks *any* purpose but proving character." *Bowie*, 232 F.3d at 930 (emphasis added). Accordingly,

> [A] Rule 404(b) objection will not be sustained if: 1) the evidence of other crimes or acts is relevant in that it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence;' 2) the fact of consequence to which the evidence is directed relates to a matter in issue other than the defendant's character or propensity to commit crime; and 3) the evidence is sufficient to support a jury finding that the defendant committed the other crime or act.

*Bowie*, 232 F.3d at 930 (quoting Fed. R. Evid. 401). Under this standard, the district court properly admitted evidence of Douglas's August 2001 PWID arrest.[8]

---

[8]Although Douglas contested the third part of the *Bowie* test—evidentiary sufficiency—in his new trial motion, *see* Mot. for a New Trial at Appx. 65–66, he does not raise this challenge on appeal. *See* Appellant's Br. at 12–30.

To support a conviction for PWID, the government had to prove beyond a reasonable doubt that, on November 7, 2002, Douglas (1) possessed a controlled substance; (2) knowingly and intentionally and; (3) with the specific intent to distribute that controlled substance. *See* 21 U.S.C. § 841(a)(1) and 841(b)(1)(B). The elements of the charged crime, therefore, made both intent and knowledge matters of consequence to Douglas's case. "Intent and knowledge are also well-established non-propensity purposes for admitting evidence of prior crimes or acts." *Bowie*, 232 F.3d at 930; *see also* Fed. R. Evid. 404(b). Evidence that Douglas previously possessed and distributed crack cocaine to an undercover police officer "has a tendency to make" it "more probable," Fed. R. Evid. 401, both that he knew the nature of the substance—crack cocaine—he was charged with possessing on November 7, 2002, and that he intended to distribute it, *see Cassell*, 292 F.3d at 793 ("[I]n cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged." (internal citations omitted)).

Douglas challenges this conclusion by first arguing that his prior arrest is not relevant because he did not dispute the elements of knowledge and intent—the permissible non-propensity purposes—at trial and, as a result, the only purpose served by the evidence was to indicate criminal propensity. *See* Appellant's Br. at 10, 18. Yet "[a] defendant's offer to stipulate or concede an element of an offense . . . does not deprive the government's evidence of relevance," *Crowder*, 141 F.3d at 1206 (citing *Old Chief v. United States*, 519 U.S. 172, 179 (1997)). Even if a defendant concedes an element of an offense, the government still has the burden of proving that element to the jury beyond a reasonable doubt. *See*, *e.g.*, *Cassell*, 292 F.3d at 794 ("It is fundamental to the criminal law of the United

States that the prosecution must prove every element of the offense beyond a reasonable doubt."). Indeed, the "standard rule [is] that the prosecution is entitled to prove its case by evidence of its own choice" because the "evidentiary account of what a defendant has thought and done can accomplish what no abstract statements [or stipulation] ever could." *Crowder*, 141 F.3d at 1207 (quoting *Old Chief*, 519 U.S. at 187) (alteration added); *see also id.* ("[T]he prosecution cannot be forced to stipulate away the force of such evidence."). Thus, " 'evidentiary relevance under Rule 401 [is not] affected by the availability of alternative proofs of the element,' such as a defendant's concession or offer to stipulate." *Id.* at 1206 (quoting *Old Chief*, 519 U.S. at 179) (alteration in original).

Douglas next asserts that, in light of the government's other evidence establishing knowledge and intent, his August 2001 PWID arrest did not make the existence of those elements "more probable," relying on our decision in *United States v. Linares*, 367 F.3d 941 (D.C. Cir. 2004). *See* Appellant's Br. at 18–22. The defendant in *Linares* was convicted of possession of a firearm by a felon. *See Linares*, 367 F.3d at 945. At trial, the government introduced evidence of the defendant's past possession of firearms under Rule 404(b). *Id.* On appeal, we concluded the evidence was irrelevant under Rule 404(b), *id.* at 952, because "[g]iven the evidence in th[e] case," "Linares's previous possession of a pistol [did not] make[] it any more likely that he knowingly possessed a gun" at the time of his later felon-in-possession arrest. *Id.* at 946. Specifically, the government presented direct evidence, in the form of eyewitness accounts, that Linares possessed the gun and that he knew that the object was a gun—by testimony that he fired the gun—when he possessed it. *See id.* at 946–47. In those circumstances, the Rule 404(b) evidence provided no additional probative value and was therefore not relevant. *See id.* at 952. "Indeed, no

reasonable jury could have acquitted Linares based on the belief that the government proved possession but failed to prove knowing possession." *Id*. at 946–47. Instead, "[i]f the jury believed the[] eyewitnesses, then Linares possessed the gun knowingly" and thus the prior possession evidence was inadmissible because the government could not use it "to prove an element that the government's evidence ha[d], by completely precluding an acquittal based on a failure to prove that element, effectively (though not formally) eliminated." *Id*. at 947.[9]

---

[9]Douglas misconstrues our holding in *Linares* in arguing that, in light of the government's other evidence establishing his knowledge and intent, his August 2001 PWID arrest did not make the existence of those elements "more probable," thereby rendering the evidence irrelevant under Rule 404(b). *See* Appellant's Br. at 18–22. While Douglas reads *Linares* to find prior bad act evidence irrelevant if the government's other evidence is sufficient to establish the elements of the offense, the Supreme Court has made clear that "evidentiary relevance under Rule 401 [is not] affected by the availability of alternative proofs of the element." *Old Chief*, 519 U.S. at 179. Indeed, Douglas's reading of *Linares* appears to combine Rule 403's balancing of probative value against unfairly prejudicial impact with the Rule 404(b) relevance inquiry. *See* Appellant's Br. at 21 (given the government's other evidence of intent and knowledge, "the introduction of the [Rule 404(b) evidence] offered little, if any, probative value beyond its tendency to show that Douglas was a drug dealer"); *see also id*. at 19–21 (describing *Linares* and asserting "this case is controlled by *Linares*"); *cf*. *Linares*, 367 F.3d at 947 ("[T]rial judges should not . . . allow the government to introduce 404(b) evidence to prove an element that the government's evidence has, by completely precluding an acquittal based on the failure to prove that element, effectively (though not formally) eliminated."). But both the Supreme Court and we have repeatedly kept separate the relevance and prejudice inquiries: "If . . . relevant evidence is inadmissible in the presence of other evidence related to it, its exclusion must rest not on

Yet *Linares* carefully distinguished the factual scenario presented here. The *Linares* decision rested largely on the conclusion that the government's eyewitness evidence already established Linares's possession of the gun and that no reasonable jury could believe that he possessed the gun without knowing that it was a gun. *Id*. *Linares* distinguished cases such as *Crowder*—a PWID case—in which specific intent constitutes an element of the crime. *See id*. at 948, 951–52. In those cases, "a reasonable jury could . . . conclude[] that although [the defendant] possessed the crack . . . , the government had failed to prove beyond a reasonable doubt that he intended to distribute it." *Id*. at 952. Indeed, proof of intent is one of the core bases for admitting evidence of other crimes or bad acts. *See Huddleston v. United States*, 485 U.S. 681, 685 (1988). Consequently, *Linares*'s relevance analysis is unsuitable to assess the relevance of Douglas's prior PWID arrest to his intent regarding the crack cocaine he was charged with possessing on November 7, 2002.

In addition, on the element of knowledge, *Linares* distinguished possession of firearms from cases involving possession of drugs. *See Linares*, 367 F.3d at 951. While a reasonable jury could not believe that a defendant possessed a firearm "without recognizing the nature of the object in his hand," a reasonable jury could conclude that a defendant

---

the ground that the other evidence has rendered it 'irrelevant,' but on its character as unfairly prejudicial, cumulative or the like, its relevance notwithstanding." *Old Chief*, 519 U.S. at 179; *see also Crowder*, 141 F.3d at 1206 (quoting *Old Chief*, 519 U.S. at 179). To the extent that Douglas reads *Linares* to hinge relevance under Rule 404(b) on the "availability of alternative proofs," *Old Chief*, 519 U.S. at 179, that interpretation is plainly foreclosed by *Old Chief* and *Crowder*.

charged with PWID possessed—and knew that he possessed—a "white powdery substance," but nonetheless believed it to be some "innocuous substance" such as "flour." *Id*. Thus, *Linares* is also distinguishable on the element of knowledge in a drug possession case because a person may possess, unlike a gun, a drug without realizing that it is an illegal substance.

Still, Douglas relies on *Linares* to challenge the relevance of his prior arrest, arguing that the government's evidence—absent the Rule 404(b) evidence—already established the elements of intent and knowledge, thereby making the Rule 404(b) evidence relevant only to criminal propensity. *See* Appellant's Br. at 20–22. With respect to knowledge, Douglas claims that, because Sheldon testified that Douglas carried the crack cocaine in clear plastic bags, "no reasonable jury could have acquitted him on the basis that the government had proved possession but not knowing possession." Appellant's Br. at 20. But, as *Linares* noted in distinguishing drug possession cases, "a reasonable jury *could* . . . conclude[] that [the defendant] thought the white powdery substance was flour (or some other innocuous substance)." *Linares*, 367 F.3d at 951 (emphasis added). Although Douglas did not assert a lack of knowledge defense at trial, the government was not thereby relieved of its burden of proving knowledge beyond a reasonable doubt. *See Crowder*, 141 F.3d at 1209 (Rule 404(b) evidence admissible even if defendant offers to stipulate to relevant elements).[10]

---

[10]While the government argues that Douglas "contended at trial that the recovered substance was not crack cocaine and his expert testified that it could have been hard soap," Appellee's Br. at 40, that contention relates not to Douglas's knowledge, but to his expert's assertion that the DEA's method of analyzing the recovered crack cocaine was faulty, *see* 2/25/04 Tr. 40; *see also* 2/24/04 Tr. 102–04, 117–18. That Douglas did not expressly claim that he believed the

Because the evidence of Douglas's prior arrest for PWID made it more probable that he knew the substance he was charged with possessing on November 7, 2002 was indeed crack cocaine, the evidence is relevant to the permissible Rule 404(b) purpose of proving Douglas's knowledge.

Moreover, the only evidence—aside from the Rule 404(b) evidence—the government presented to establish Douglas's intent to distribute crack cocaine was a narcotics expert who testified that the quantity of drugs discovered on November 7, 2002 was consistent with an intent to distribute. *See* 2/20/04 (p.m.) Tr. 96–98. Yet this evidence "mentioned only some hypothetical drug dealer." *Crowder*, 141 F.3d at 1208. In contrast, "the prosecution's evidence of [Douglas's] prior crack cocaine sales—sales close in time and place to those charged in the indictment—was not meant to show that *someone* had intent" but rather "that [Douglas] had the intent to distribute the crack." *Id*. (emphasis in original). Indeed, the expert's testimony regarding a hypothetical drug dealer "could not possibly have substituted for such proof" since "[i]t did not even mention [Douglas] by name." *Id*. With merely hypothetical expert testimony, the "concrete evidence of [Douglas's] actions" when he was earlier arrested for PWID makes it more probable that he intended to distribute the crack cocaine as alleged in the

white substance to be "imitation crack," 2/25/04 Tr. 40, does not render *Linares* applicable here given that *Linares* distinguished PWID cases, specifically *Crowder*, based on what a reasonable jury "could" conclude about a defendant's knowledge. *Linares*, 367 F.3d at 951. Indeed, *Crowder* involved a defendant who stipulated to—rather than simply failed to challenge—knowledge, *see Crowder*, 141 F.3d at 1209, a circumstance that, according to *Linares*, could permit a reasonable jury to infer a lack of knowledge, *see Linares*, 367 F.3d at 951.

indictment. *Id*. After all, "[o]n the other occasion when he had crack cocaine in his possession, he sold it." *Id*. at 1209. Accordingly, the evidence of Douglas's prior PWID arrest is relevant to the permissible Rule 404(b) purpose of establishing his intent to distribute crack cocaine on November 7, 2002.

In sum, because the prior arrest evidence makes it more probable that Douglas knew that he possessed crack cocaine on November 7, 2002 and that he intended to distribute it, the evidence is relevant to non-propensity purposes. And "if [relevant] evidence is offered for a purpose Rule 404(b) permits, such as proving knowledge or intent, Rule 404(b) does not require that the evidence be excluded" simply because it may also suggest criminal propensity. *Id*. (internal quotation omitted). Accordingly, the district court did not abuse its discretion in admitting Douglas's August 2001 PWID arrest under Rule 404(b).

**B.**

Yet it is "the opportunity to seek . . . admission," rather than admission itself, that Rule 404(b) guarantees. *Crowder*, 141 F.3d at 1206. Although evidence of a prior bad act is relevant to a non-propensity purpose, it is nonetheless inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. But "Rule 403 'tilts, as do the rules as a whole, toward the admission of evidence in close cases,' even when other crimes evidence is involved." *Cassell*, 292 F.3d at 795 (quoting *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984)). Indeed, in adopting the Federal Rules of Evidence, the Congress was concerned "with ensuring that restrictions would not be placed on the admission" of other crimes evidence. *Crowder*, 141 F.3d at 1210. Consequently, "it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close

relationship to the event charged." *Cassell*, 292 F.3d at 795 (internal quotation omitted). Moreover, because "the trial court is in the best position to perform this subjective balancing . . . its decision should be reviewed only for 'grave abuse.' " *Id*. at 795–96 (quoting *United States v. Washington*, 969 F.2d 1073, 1081 (D.C. Cir. 1992) (internal quotation omitted)).[11]

As with his relevance challenge to the Rule 404(b) evidence, Douglas challenges the probative value of his prior PWID arrest in light of the government's other evidence. *See* Appellant's Br. at 25–28. The other evidence, however, was not without holes. *See supra* pp. 12–13. Specifically, Douglas sought to impeach the only witness—Sheldon—who observed the plastic bags in his hand during the chase, *see* 2/19/04 Tr. 111–14; Douglas's expert witness contested the government's methodology in determining that the recovered plastic bags contained crack cocaine, *see* 2/24/04 Tr. 80–83, 103–04, 117–18; and the government's only other evidence of intent consisted of the testimony of a narcotics expert regarding the likely intent of a

---

[11]As Douglas points out, the district court did not expressly perform the Rule 403 balancing until his new trial motion. *See* Mem. Order on Mot. for New Trial at Appx. 61–63. But "[w]e do not . . . prescribe any specific form this balancing must take, and will not reverse for failure to make a formal Rule 403 finding if the applicable considerations are apparent from the record." *Bowie*, 232 F.3d at 931. Here, the district court, specifically "looking at [Rule] 403," conducted a hearing on the admissibility of the Rule 404(b) evidence during the trial, believing that under Rule 403 "it's really necessary to hear [the evidence] in order to determine whether or not that evidence should really come in." 2/20/04 (a.m.) Tr. 49. Moreover, the district court's disposition of Douglas's new trial motion manifests careful consideration of the required Rule 403 balancing. *See* Mem. Order on Mot. for New Trial at Appx. 61–63.

hypothetical crack cocaine dealer, *see* 2/20/04 (p.m.) Tr. 96–98. In this context, the concrete evidence of Douglas's prior arrest was highly probative, particularly regarding intent where "some hypothetical individual was not on trial, [Douglas] was." *Bowie*, 232 F.3d at 932; *see also Crowder*, 141 F.3d at 1208. Further, the probative value of another crime is significant "when the evidence indicates a close relationship to the event charged," *Cassell*, 292 F.3d at 795, as it does here where Douglas's prior arrest involved sale of the same substance in almost the same neighborhood. In light of the record, the district court's conclusion that the Rule 404(b) evidence had significant probative value, *see* Mem. Order on Mot. for New Trial at Appx. 62–63, was not a "grave abuse" of discretion, *Cassell* 292 F.3d at 796.

With regard to the unfairly prejudicial impact of admitting evidence of Douglas's August 2001 PWID arrest, such evidence almost unavoidably raises the danger that the jury will improperly "conclude that because [Douglas] committed some other crime, he must have committed the one charged in the indictment." *Crowder*, 141 F.3d at 1210. This danger, however, "cannot give rise to a *per se* rule of exclusion." *Id*.; *see also Cassell*, 292 F.3d at 796. Indeed, the district court instructed the jury of the permissible and impermissible uses of the evidence and the record indicates no other "compelling or unique evidence of prejudice in th[e] case." *United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995) (internal quotation omitted). Here, the district court carefully instructed the jury on the proper use of the Rule 404(b) evidence both on the morning after introduction of the evidence, *see* 2/24/04 Tr. 37–38, and in its final charge to the jury, *see* 2/26/04 Tr. 92–93, cautioning that it "may only consider the evidence for the limited purpose of showing whether the defendant, if he possessed cocaine in this case, did so knowingly and intentionally with the specific intent

to distribute," 2/24/04 Tr. 38. Indeed, the district court emphasized its limiting instructions in finding no unfair prejudice in the admission of Douglas's prior PWID arrest. *See* Mem. Order on Mot. for New Trial at Appx. 63. Moreover, "[g]iven the likeness of the [two] allegations" of PWID and "the coincidence of the locations involved . . . , there is 'no compelling or unique evidence of prejudice in this case that warrants upsetting the trial court's determination.' " *United States v. Burch*, 156 F.3d 1315, 1324 (D.C. Cir. 1998) (quoting *United States v. Washington*, 969 F.2d 1073, 1081 (D.C. Cir. 1992)). On this record, the district court's conclusion that the Rule 403 balancing tilted in favor of admission, *see* Mem. Order on Mot. for New Trial at Appx. 63, was not a "grave abuse" of discretion, *Cassell*, 292 F.3d at 796.

For the foregoing reasons, we affirm the district court's admission of the evidence of Douglas's August 2001 PWID arrest.

*So ordered.*