# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 17, 2011        Decided April 29, 2011

No. 06-3070

UNITED STATES OF AMERICA,
APPELLEE

v.

BRYAN BURWELL, AARON PERKINS, MALVIN PALMER, CARLOS
AGUIAR, MIGUEL MORROW, AND LIONEL STODDARD,
APPELLANTS

Consolidated with 06-3071, 06-3073, 06-3077, 06-3083,
06-3084

Appeals from the United States District Court
for the District of Columbia
(No. 04cr00355-05)

*Robert S. Becker*, appointed by the court, argued the issues
Other-Crimes Evidence, Bias Cross-Examination Evidence,
and Motion to Sever. *William Francis Xavier Becker*,
appointed by the court, argued the issue of Sufficiency of
Machine-Gun Evidence. With them on the briefs were *Mary E.*

*Davis*, *Allen H. Orenberg*, and *David B. Smith*, appointed by the court, *A. J. Kramer*, Federal Public Defender, and *W. Gregory Spencer*, Assistant Federal Public Defender.

*Stratton C. Strand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, *Roy W. McLeese III*, *Daniel P. Butler*, and *Stephanie C. Brenowitz*, Assistant U.S. Attorneys.

Before: HENDERSON, TATEL and BROWN, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* BROWN.

BROWN, *Circuit Judge*: The relatively routine legal questions presented by this appeal arise from quite an unusual set of facts. Appellants are modern-day bank robbers whose old-school tactics—more reminiscent of the brashness of John Dillinger than the subtlety of Willie Sutton—included subduing innocent bystanders with gratuitous gunplay, pistol whipping a victim, and peppering a pursuing police car with bullets. When the aftermath of their final robbery was captured on film by a TV station's news camera crew, the robbers were apprehended a few weeks later, convicted by jury of numerous crimes, and sentenced to various terms of imprisonment. They now assert assorted infirmities in both the trial and their sentences. We affirm.

I

Because "brevity is the soul of wit,"[1] we offer only an abbreviated version of the essential facts underlying this appeal. The six Appellants, along with co-conspirators-turned-government-witnesses Nourredine

---

[1] WILLIAM SHAKESPEARE, HAMLET act 2, sc. 2.

Chtaini and Omar Holmes, indulged in a violent crime spree throughout the District of Columbia metro area that lasted for nearly a year and a half. Appellants, who began by cultivating and selling marijuana, evolved into a ring that committed armed bank robberies, using stolen vehicles to travel to the targeted banks and make their escapes. By the summer of 2004, the robbers had developed a signature style. The gang wore bullet-proof vests, masks, and gloves, and relied on superior fire power, preferring to use military weapons like AK-47s instead of handguns because they surmised the metropolitan police "wouldn't respond" when Appellants "robb[ed] banks with assault weapons." (Tr: 5/10/05PM at 3950). The gang made use of several stolen vehicles, strategically placed along the get-away-route, for each robbery. The robbers would serially abandon the vehicles, often torching them in an attempt to destroy any forensic evidence that might be left behind.

After their apprehension, a grand jury issued a twenty-count indictment charging Appellants with racketeering conspiracy, armed-bank-robbery conspiracy, [2] four armed bank robberies, two assaults with intent to kill, and various weapons crimes. Following a lengthy trial, a jury convicted each defendant of RICO conspiracy under 18 U.S.C. § 1962(d) and conspiracy to commit armed bank robbery under 18 U.S.C. § 371. Each defendant was also convicted for his individual participation in specific bank robberies and of various firearms offenses. Additionally, Miguel Morrow was convicted of assault with intent to kill while armed pursuant to D.C. Code §§ 22-401, -1805, -4502, but Morrow and Lionel

---

[2] Only the racketeering and armed-bank-robbery conspiracies were charged against every Appellant. The other crimes were charged against Appellants in various combinations.

Stoddard were acquitted of a separate assault with intent to kill charge.

At sentencing, the district court prescribed life imprisonment for Morrow. As for the other defendants, Stoddard received 725 months' imprisonment; Carlos Aguiar, 720 months' imprisonment; Bryan Burwell, 495 months' imprisonment; Aaron Perkins, 417 months' imprisonment; and Malvin Palmer, 512 months' imprisonment. The court also sentenced each defendant to a term of supervised release and ordered the defendants to pay restitution, jointly and severally. The defendants now appeal, alleging an assortment of errors in both their trial and sentencing proceedings.

II

Although Appellants raised numerous issues on appeal, only two of those arguments have arguable merit. We limit our discussion accordingly.

A

During the trial, the government sought and gained admission of a hoard of "other crimes" evidence. The Appellants now argue the admission of this evidence was in error, both because it was offered for an impermissible purpose and because its probative value was substantially outweighed by its prejudicial effect. We disagree.

Federal Rule of Evidence 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Nonetheless, such evidence is expressly permitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

mistake or accident." *Id.* We have described Rule 404(b) as "a rule of inclusion rather than exclusion." *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000). Even if admissible under Rule 404(b), however, that evidence is subject to Rule 403's balancing test: evidence is admissible unless its probative value is substantially outweighed by its prejudicial effect. Fed. R. Evid. 403. We review the admission of other crimes evidence for abuse of discretion. *United States v. Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2007). But "because the trial court is in the best position to perform the subjective balancing required by Rule 403," we review its Rule 403 rulings "only for grave abuse." *Id.* (quotation marks and alteration omitted).

We must first confront Appellants' argument that before permitting the government to introduce other crimes evidence, the district court had "to rule preliminarily that the jury could reasonably find . . . by a preponderance of the evidence" that Appellants committed the uncharged acts. Appellants' Opening Br. at 18. Appellants are correct that when the government seeks to introduce evidence that a defendant committed another crime, that evidence is only relevant, and hence potentially admissible, if a reasonable jury could find by a preponderance of the evidence that the defendant, and not someone else, was responsible for the crime. *See Huddleston v. United States*, 485 U.S. 681, 690 (1988); *see also* Fed. R. Evid. 104(b). Because district courts have broad "discretion in controlling the order of proof at trial," however, they may conditionally admit evidence of other crimes subject to the requirement that the government later introduce sufficient evidence for the jury reasonably to find that the defendant committed those crimes. *Huddleston*, 485 U.S. at 690; *see also* Fed. R. Evid. 104(b) (providing that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact," the court may admit the evidence "subject to[] the introduction

of evidence sufficient to support a finding of the fulfillment of the condition"). We thus reject Appellants' suggestion that the district court abused its discretion by permitting the government to introduce other crimes evidence without reaching a preliminary determination as to whether the government had presented sufficient evidence to support a finding that defendants committed the uncharged acts. Appellants made no objection on conditional relevancy grounds, and thus, the district court's failure to make an explicit sufficiency determination on its own initiative did not constitute plain error. *See Huddleston*, 485 U.S. at 690 n.7 ("It is, of course, not the responsibility of the judge sua sponte to insure that the foundation evidence is offered . . . ." (internal quotation marks omitted)).

The evidence admitted under Rule 404(b)[3] falls into three broad categories: evidence of Appellants' commission of three carjackings; evidence of Appellants' theft of forty cars; and evidence of Appellants' use of false names, as well as their marijuana cultivation and distribution. The district court admitted the evidence of the carjackings, false names, and marijuana cultivation and distribution for a variety of purposes, including the theory that it demonstrated Appellants' modus operandi and identities. We agree with Appellants that admission for either of those purposes was improper.

Although not listed in Rule 404(b)'s nonexclusive list of proper purposes, modus operandi evidence is normally admitted pursuant to the identity exception. *See United States*

---

[3] The district court primarily admitted the evidence under Rule 404(b). But it also relied on the theories of direct evidence and inextricable intertwinement evidence. *United States v. Morrow*, No. CRIM 04355, 2005 WL 3159572 (D.D.C. Apr. 7, 2005). Because we find the evidence was admissible under Rule 404(b), we need not address these other theories of admissibility.

*v. Carr*, 373 F.3d 1350, 1353 (D.C. Cir. 2004); *United States v. Crowder*, 87 F.3d 1405, 1413 (D.C. Cir. 1996), *rev'd on other grounds*, 519 U.S. 1087 (1997). But evidence of modus operandi must be unique; "the Government must establish not only that the extrinsic act bears some peculiar or striking similarity to the charged crimes, but also that it is the defendant's trademark, so unusual and distinctive as to be like a signature."[4] *Crowder*, 87 F.3d at 1413 (quotation marks omitted). The Appellants' use of violence and weapons is, unfortunately, not so unique to crimes in the District of Columbia that it constitutes appropriate modus operandi evidence.

Nor was their use of guns and violence so distinctive that it demonstrated Appellants' identity. To be relevant to identity, the other crimes must share similar characteristics with the charged acts. *United States v. Lawson*, 410 F.3d 735, 741 (D.C. Cir. 2005) (admitting other crimes evidence to prove identity in a charged robbery when, during both the charged and uncharged robberies, there were two robbers—one tall and one short, the tall robber wielded a distinctive gun, the short robber collected the money, and the tall robber wore the same clothing). As with modus operandi, the naked use of violence and weapons, without more, does not rise to the level of similarity necessary to make the other crimes evidence relevant to identity.

But just because evidence is inadmissible for one purpose does not mean it is inadmissible for another. *See, e.g.*, Fed. R. Evid. 404(b) (explaining that evidence of other acts is inadmissible for propensity purposes, but admissible for other

---

[4]Think, for example, of the 1990 Macaulay Culkin movie *Home Alone* in which the "Wet Bandits" left the faucets running in each house they burgled. HOME ALONE (20th Century Fox 1990).

purposes). The Appellants were charged with violating 18 U.S.C. § 1962(d), which prohibits, among other things, conspiracies to conduct the affairs of an "enterprise" through a pattern of racketeering activity. An "enterprise" includes "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Even if the government is not *required* to prove the existence of an association under § 1962(d), *cf. Salinas v. United States*, 522 U.S. 52, 65 (1997); *United States v. Hoyle*, 122 F.3d 48, 50 (D.C. Cir. 1997) (explaining a RICO conspiracy "requires proof that the defendant agreed to further a substantive RICO violation"), it certainly is entitled to do so, *see United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000) (allowing the prosecution "considerable leeway" in proving its conspiracy case through evidence of other offenses). The Appellants' offer to stipulate to their association has no bearing on the government's entitlement to prove its case; rather, it is only one factor the court considers in conducting its Rule 403 analysis. *See United States v. Crowder*, 141 F.3d 1202, 1209 (D.C. Cir. 1998) (en banc). Because evidence of the three carjackings, the stolen cars, the use of false names, and the marijuana cultivation and distribution was relevant to prove Appellants' association, we see no error in admitting this evidence under Rule 404(b).[5] Moreover, considering the nature of the evidence against Appellants (for example, the bank surveillance video of Appellants brandishing automatic weapons and pointing them at customers), the probative value of most of this evidence is not substantially outweighed by the evidence's potential for prejudice. *Cf. United States v. Mahdi*, 598 F.3d 883, 892 (D.C. Cir. 2010) (upholding Rule 403 analysis where other crimes

---

[5] We note that the third carjacking, "the Southern Comfort" carjacking, was properly admitted as direct evidence of the charged RICO conspiracy, so the alternative theory of admission under Rule 404(b) was unnecessary, but sufficient.

evidence of an assault with a knife and a stabbing "paled alongside the extreme violence of the acts of which [the defendant] was indicted and convicted").

The one piece of evidence that gives us pause is the admission of the "Silver Spring" carjacking. This carjacking incident involved Appellant Morrow, and co-conspirators Chtaini and Holmes. In November 2003, while driving around near Silver Spring, the trio decided to steal a Mercedes S5 because Morrow's brother and chop-shop owner, Romell Morrow, had informed them he would pay top dollar for a car of that model. The men encountered one S5, but chivalrously decided against stealing it because it contained a female passenger. When they encountered a second S5, this one being driven by a man, they decided to follow it. The car reached a back road in Silver Spring, at which point Chtaini, who was driving, lightly struck the car's bumper so the driver would pull over. The three men exited their car wearing masks and carrying guns. They subdued the driver and jumped into the S5, only to find the driver's two grandchildren in the backseat. The men removed the five-year-old boy and two-year-old girl from the S5 "in a gentle way," and then drove away leaving their old car behind. (Tr. 5/23/05AM at 5223).

In determining this evidence was admissible under Rule 403, the district court's explanation is somewhat terse. In fact, it does not even mention explicitly the possible prejudice arising from the sympathetic nature of the victims. *Morrow*, 2005 WL 3159572, at *18. Arguably, the fact that Morrow forcibly stole a car from a grandfather and his two young grandchildren could have struck the jurors as particularly egregious. The district court should have considered this in its Rule 403 analysis. Nonetheless, we do not think the district court's Rule 403 conclusion amounted to grave error. The prejudice resulting from the carjacking evidence is slight when

compared to the evidence of the violent acts for which Appellants were indicted.[6] *Cf. Mahdi*, 598 F.3d at 892. Moreover, the district court gave numerous and careful limiting instructions, which we think cure any potential prejudice. *United States v. Perholtz*, 842 F.2d 343, 361 (D.C. Cir. 1988) ("[I]t is the law, pure and simple, that jury instructions can sufficiently protect a defendant's interest in being free from undue prejudice." (quoting *United States v. Daniels*, 770 F.2d 1111, 1120 (D.C. Cir. 1985) (Starr, J., concurring))).

The district court did not abuse its discretion in admitting other acts evidence.

B

Appellant Burwell argues the government presented insufficient evidence to support his conviction under 18 U.S.C. § 924(c)(1)(B)(ii). Section 924(c)(1)(A) provides for a mandatory consecutive sentence of at least five years for any person who uses or carries a firearm "during and in relation to" a crime of violence or for any person who possesses a firearm "in furtherance of" a crime of violence. The mandatory minimum sentence skyrockets to thirty years, however, if the firearm involved was a machinegun. 18 U.S.C. § 924(c)(1)(B)(ii). A machinegun is defined as "a gun capable of firing automatically, that is, of firing several bullets with one pull of the trigger." *United States v. Harris*, 959 F.2d 246, 257 (D.C. Cir. 1992) (per curiam), *overruled on other grounds by*

---

[6] The evidence introduced to prove the indicted acts included the bank surveillance photos (one of which showed an Appellant pointing an automatic weapon at a boy and most of them showing Appellants brandishing automatic assault rifles), the firing of shots to intimidate bank employees, and the attempted killing of a police officer.

*United States v. Stewart*, 246 F.3d 728, 730–32 (D.C. Cir. 2001); 18 U.S.C. § 921(23) (referencing 26 U.S.C. § 5845(b)).

Burwell's § 924 conviction arose out of his participation in the June 12, 2004 robbery of Industrial Bank. Because the gun he used was a machinegun, Burwell received the thirty-year sentence, in addition to his other sentences. He asserts two arguments on appeal. First, Burwell contends the government presented insufficient evidence that he carried the AK-47 with two handles (the machinegun attributed to him) during the Industrial Bank robbery. Second, he argues that even if the government satisfied its burden of proof as to his weapon, the government failed to show he knew the gun was capable of firing automatically.

Burwell's first contention is an attempt to reargue the facts. Chtaini testified Burwell carried the two-handled AK-47 during the Industrial Bank robbery. Granted, this testimony arguably conflicts with that of the bank manager. The bank manager, who admittedly "did not know much about guns," (Tr: 4/21/05PM at 1916) testified that the man who asked her for the keys to the vault was carrying the two-handled AK-47, and Chtaini testified that it was he and Morrow who went to the vault area. If true, then Burwell could not have been carrying the AK-47 with two handles. Nonetheless, it is not our responsibility on appeal to resolve factual discrepancies. That task falls in the first instance to the jury. *Green v. United States*, 289 F.2d 765, 766 (D.C. Cir. 1961) (per curiam) ("In our jurisprudence the credibility of witnesses and the derivation of the truth from oral testimony are reposed in the hearer of the witnesses." (citation omitted)). Where, as here, it was entirely reasonable for the jury to have credited Chtaini's testimony over the bank manager's, that assessment is beyond reproach. *See Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 561 (D.C. Cir. 1993) (explaining where the jury acts

reasonably, "[r]esolving [factual] discrepancies . . . is quintessentially a matter for the jury"). Because Chtaini was intimately involved in the planning and execution of the robbery, the jury reasonably could have credited his testimony over the bank manager's, especially as the manager was under duress and observed the weapons only briefly in comparison to Chtaini.

Burwell's second argument fails on the law. We have squarely held that a defendant need not know the weapon he is carrying is a machinegun for a § 924(c)(1) conviction to stand. *United States v. Harris*, 959 F.2d 246, 257–59 (D.C. Cir. 1992). In *United States v. Harris*, we considered whether the government must prove the defendant knowingly possessed a machinegun to sustain convictions under § 924(c)(1) and 26 U.S.C. § 5861(d), which proscribes the receipt or possession of certain firearms, such as machineguns, that are improperly registered. We agreed that knowledge is a requirement for conviction under § 5861(d) because, without knowledge, that statute risked "criminaliz[ing] acts completely innocuous on their face [i.e. gun ownership] despite the actor's ignorance of the unknown facts that [make] his behavior illegal." *Id.* at 261. However, we refused to read a similar *mens rea* requirement into § 924(c). Because § 924(c) applies only to those individuals involved in the commission of violent crimes or drug trafficking, there is no risk the statute might ensnare individuals engaged in otherwise innocent conduct. *Id.* at 259. We held the government need only show "the defendant engaged in drug trafficking [or a crime of violence] and intentionally used firearms in the commission of [that crime]" to obtain a conviction under § 924(c). *Id.* at 258.

Burwell insists that *Harris* has been undermined by two subsequent Supreme Court cases, *Staples v. United States*, 511 U.S. 600 (1994) and *United States v. O'Brien*, 130 S. Ct. 2169

(2010). *Staples*, however, merely held that to obtain a conviction under § 5861(d), the government must prove the defendant knew the unregistered gun he possessed had the characteristics of a machinegun. 511 U.S. at 602. This is exactly the conclusion we reached in *Harris*; in fact, *Staples* cited *Harris* approvingly. *Id.* at 620. True, *Staples* explained that because "offenses that require no *mens rea* generally are disfavored, . . . some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of the crime." *Id.* at 606 (internal citation omitted). But we acknowledged this "presumption in favor of *mens rea*" in *Harris*. 959 F.3d at 258. We simply concluded that with regard to § 924(c), Congress intended the *mens rea* requirement to attach only to the fact of firearm use, not to the fact the firearm had the characteristics of a machinegun. *Id.* at 258. This holding is entirely consistent with *Staples*, where the Court worried that reading § 5861(d) to dispense with the *mens rea* requirement would criminalize innocent activity. 511 U.S. at 614–15. Of course, this concern is nonexistent when the charges—like those brought under § 924(c)—only apply to criminal activity. *Harris*, 959 F.2d at 258–59; *see also United States v. Gilliam*, 167 F.3d 628, 638 (D.C. Cir. 1999) (concluding in no uncertain terms, "*Staples* does not extend a special *mens rea* requirement to § 924(c).").

Burwell also relies on the Court's recent decision in *United States v. O'Brien*, where the Supreme Court held that, under § 924(c), the fact that the firearm the defendant possessed was a machinegun "[was] an element to be proved to the jury beyond a reasonable doubt," not a "sentencing factor" to be proved to the judge by a preponderance of the evidence at sentencing. 130 S. Ct. at 2172. Admittedly, *Harris* is potentially inconsistent with *O'Brien* to the extent *Harris* referred to § 924(c)'s machinegun provision as a "sentence enhancement." *Harris*, 959 F.2d at 258. But in *Harris* we also

described the "automatic firing capability of a weapon" as an "element of the crime." *Id*. at 259. Thus, it is unclear what impact *O'Brien* has on *Harris*. But even assuming *Harris* incorrectly characterized § 924(c)'s machinegun provision as an enhancement, that does not tell us whether the government must prove the defendant knew he was carrying a machinegun. On this point, Burwell is simply mistaken. *O'Brien* does not require the government to prove beyond a reasonable doubt that "a defendant knew he was using or carrying a machine gun, as opposed to a semi-automatic firearm." Reply Br. at 36. The *O'Brien* Court expressly refrained from deciding whether "a defendant who uses, carries, or possesses a firearm must be aware of the weapon's characteristics." 130 S. Ct. at 2173. In the absence of an affirmative statement of the Court, we adhere to our precedent in holding that conviction under § 924(c) does not require proof the defendant knew the weapon was a machinegun. *See Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 34 n.* (D.C. Cir. 2002) ("[A] panel is bound to abide by [circuit] precedent until it is overturned by the court sitting en banc or by the Supreme Court.").

Nor does *O'Brien*'s characterization of the machinegun provision as an offense element trigger the "presumption in favor of *mens rea*." *Harris*, 959 F.2d at 258. This presumption applies with the most force to "statutory elements that criminalize otherwise innocent conduct." *United States v. X-Citement Video, Inc*., 513 U.S. 64, 72 (1994). Unlike with § 5861(d), § 924(c) does not pose any danger of ensnaring "an altar boy [who made] an innocent mistake." *Harris*, 959 F.2d at 259.

## C

We have fully considered the rest of Appellants' arguments and find them to be without merit. Appellants'

arguments contesting the admission of bias/cross-examination evidence, the denial of their severance motion, the exclusion of extrinsic evidence, the objections sustained during their closing arguments, the sufficiency of the evidence supporting their convictions, and the consecutive nature of their sentences are rejected.

### III

For the reasons stated, the convictions and sentences are

*Affirmed.*